# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP2484 |
| COMPLETE TITLE: | Water Well Solutions Service Group Inc., Plaintiff-Appellant-Petitioner, v. Consolidated Insurance Company, Defendant-Respondent. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 365 Wis. 2d 223, 871 N.W.2d 276)
(Ct. App. 2015 – Published)
PDC No: 2015 WI App 78

| | |
|---|---|
| OPINION FILED: | June 30, 2016 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 16, 2016 |

| SOURCE OF APPEAL: | |
|---|---|
| COURT: | Circuit |
| COUNTY: | Waukesha |
| JUDGE: | James R. Kieffer |

| JUSTICES: | |
|---|---|
| CONCURRED: | |
| DISSENTED: | BRADLEY, A. W., J. and ABRAHAMSON, J. dissent (Opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiff-appellant-petitioner, there were briefs by *Timothy M. Hansen*, *Charles J. Crueger*, *James B. Barton*, and *Hansen Reynolds Dickinson Crueger LL,* and oral argument by *Timothy M. Hansen*.


For the defendant-respondent, there was a brief by *William J. Katt*, *Christina A. Katt*, *Corey J. Wright* and *Wilson Elser Moskowitz Edelman & Dicker, LLP*, and oral argument by *William J. Katt*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2014AP2484
(L.C. 2014CV254)

STATE OF WISCONSIN      :      IN SUPREME COURT

Water Well Solutions Service Group Inc.,

     Plaintiff-Appellant-Petitioner,

     v.

Consolidated Insurance Company,

     Defendant-Respondent.

**FILED**

**JUN 30, 2016**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 REBECCA G. BRADLEY, J. In this duty to defend case, Water Well Solutions Service Group Inc. (Water Well) asks us to reverse the court of appeals' decision[1] affirming the Waukesha County Circuit Court's[2] summary judgment decision in favor of Consolidated Insurance Company, Water Well's insurer. Applying the longstanding four-corners rule used to determine whether a complaint triggers the duty to defend, see Doyle v. Engelke, 219 Wis. 2d 277, 284, 580 N.W.2d 245 (1998), both the circuit court

---

[1] Water Well Sols. Serv. Grp. Inc. v. Consol. Ins. Co., 2015 WI App 78, 365 Wis. 2d 223, 871 N.W.2d 276.

[2] The Honorable James R. Kieffer presided.

and the court of appeals concluded that Consolidated did not breach its duty to defend Water Well. In response, Water Well argues this court should craft an exception to the four-corners rule allowing courts to consider extrinsic evidence when an insurer has unilaterally decided that no duty to defend exists based on exclusions in the insurance policy.

¶2 Specifically, we are asked to decide whether this court should allow admission of extrinsic evidence under a limited exception to the four-corners rule in cases where (1) the policy provides an initial grant of coverage based on facts alleged in the complaint, (2) the insurer denies a duty to defend its insured based on the application of specific policy exclusions but without seeking a coverage determination from a court, and (3) the insured asserts that the underlying complaint is factually incomplete or ambiguous. We are further asked to determine, absent an exception to the four-corners rule, whether a court should compare the four corners of the complaint to the entire insurance policy, including exclusions and exceptions, or if the court's review is limited to comparing the complaint to the terms of the policy governing the initial grant of coverage. We confirmed in Marks v. Houston Cas. Co., 2016 WI 53, ¶¶61-76, __ Wis. 2d __, __ N.W.2d __, that under the four-corners rule the entire policy must be examined, including the coverage-granting clauses, exclusions, and exceptions to any applicable

exclusions.[3]  Thus, we also decide whether any exclusions in Consolidated's policy apply.

¶3  We affirm the court of appeals and hold that Consolidated did not breach its duty to defend Water Well. First, we reject Water Well's request to craft a limited exception to the four-corners rule, which has long endured to the benefit of Wisconsin insureds.  We are not persuaded that an exception to this rule is necessary.  Second, as we explain in Marks, __ Wis. 2d __, ¶¶61-76, released today in conjunction with this decision, the four-corners rule requires a court to compare the complaint to the terms of the entire insurance policy in determining whether the duty to defend is triggered. Thus, we reject Water Well's argument that the court's comparison is limited to reviewing the insurance policy's granting clause.  The longstanding four-corners comparison rule applies in all duty to defend cases, including cases such as this one where the policy provides an initial grant of coverage, the insurer made a unilateral decision to refuse to defend based on specific policy exclusions, and the insured asserts the underlying complaint is factually incomplete or ambiguous. Finally, after comparing the four corners of the underlying complaint to the terms of the insurance policy at issue, we conclude that the "Your Product" exclusion applies to preclude

---

[3] The court heard oral arguments in this case and in Marks v. Houston Cas. Co., 2016 WI 53, __ Wis. 2d __, __ N.W.2d __ on the same day, March 16, 2016.

coverage. As a result, Consolidated did not breach its duty to defend Water Well and is entitled to summary judgment as a matter of law; therefore, we affirm.

## I. BACKGROUND

¶4 In 2009, Waukesha Water Utility (Waukesha) contracted with Water Well to perform work on Well #10, an existing well located in the City of Waukesha. Waukesha hired Water Well to remove an existing pump, install a new pump, and complete reinstallations of the pump. In February 2011, the well pump unthreaded from a pipe column and fell to the bottom of the well.

¶5 Argonaut Insurance Company,[4] Waukesha's insurer, filed suit against Water Well in federal district court. Argonaut's complaint alleged that "Water Well, its agents, employees and representatives" were negligent in the installation and reinstallations of the well pump and that "Water Well, its agents, employees and/or representatives" breached their contractual obligations. Specifically, Argonaut's complaint alleged that the well pump "unthreaded and separated from the pipe column," which "caused the Well Pump, including the motor, to fall to the bottom of the approximately 1910-foot-deep well." Argonaut asserted that Water Well failed to install two setscrews, "which allowed operating torques and vibrations to

---

[4] It is undisputed that the well pump at issue is covered under Waukesha's policy with Argonaut. In the underlying federal suit, Argonaut acted as subrogee of Waukesha.

4

cause the Well Pump to rotate and unthread from the pipe column and caused the Well Pump to fall to the bottom of the well." Argonaut sought $300,465.48 in subrogated damages. We set forth pertinent paragraphs of Argonaut's complaint in our analysis.

¶6 Water Well was insured under a Commercial General Liability Primary Policy (CGL policy) with Consolidated at the time the alleged damages occurred.[5] Water Well tendered its defense to its insurer, Consolidated, in the action initiated by Argonaut. The parties do not dispute that the CGL policy provides an initial grant of coverage.[6] However, Consolidated denied Water Well's defense tender stating it had no duty to defend or indemnify Water Well under the CGL policy because the "Your Work" and the "Your Product" exclusions applied and removed coverage for the damages alleged in Argonaut's complaint.

¶7 After Consolidated refused to defend Water Well in the Argonaut action, Water Well obtained counsel, incurred attorney's fees and costs, and eventually settled with Argonaut for $87,500. Water Well then filed suit against Consolidated, alleging that Consolidated breached its duty to defend Water Well in the underlying action initiated by Argonaut. Water Well

---

[5] The CGL policy at issue was in effect from November 1, 2010 until November 1, 2011.

[6] The policy provides an initial grant of coverage for "property damage" that arises from an "occurrence," which is defined, in part, as "an accident."

5

also alleged that Consolidated acted in bad faith when it refused to provide a defense.[7]

¶8 The Waukesha County Circuit Court granted Consolidated's motion for summary judgment after considering cross-motions for summary judgment. It determined that under applicable Wisconsin case law, a court must compare the four corners of the complaint to the terms of the entire insurance policy when deciding whether an insurer breached its duty to defend its insured. The circuit court concluded that this comparison encompassed the policy's coverage provisions and exclusions, but not extrinsic evidence Water Well offered in support of its assertion that its subcontractor's work on preexisting pipes triggered coverage under the policy.[8] Based on a comparison of the four corners of the complaint and the terms of the entire policy, the circuit court determined that the allegations in the Argonaut complaint fell under both the "Your Product" and the "Your Work" exclusions. Therefore, it

---

[7] Water Well's bad faith claim was bifurcated from its duty to defend claim by stipulation. The circuit court stayed discovery and proceedings on the bad faith claim pending the resolution of the breach of the duty to defend claim.

[8] Along with its summary judgment motion, Water Well submitted an affidavit from its operations manager, Steve Judkins. The Judkins affidavit contained extrinsic evidence that Water Well argues supports its position that the "Your Product" exclusion did not apply and the subcontractor exception to the "Your Work" exclusion restored coverage.

concluded that "there is no covered claim and therefore there was no duty to defend."[9]

¶9 The court of appeals affirmed in a published decision. Water Well Sols. Serv. Grp. Inc. v. Consol. Ins. Co., 2015 WI App 78, ¶1, 365 Wis. 2d 223, 871 N.W.2d 276. The majority's reasoning mirrored the circuit court's: it reviewed the four corners of Argonaut's complaint, compared the complaint to the terms of the entire insurance policy, and concluded that both the "Your Work" and the "Your Product" exclusions eliminated coverage. Id., ¶¶6-7, 10, 13, 16-18.

¶10 We granted Water Well's petition for review.

## II. STANDARD OF REVIEW

¶11 We independently review a grant of summary judgment using the same methodology of the circuit court and the court of appeals. Blasing v. Zurich Am. Ins. Co., 2014 WI 73, ¶21, 356 Wis. 2d 63, 850 N.W.2d 138. Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2) (2013-14);[10] Blasing, 356 Wis. 2d 63, ¶21.

---

[9] The circuit court also determined that since Consolidated did not breach its duty to defend, Water Well could not "establish a 'fundamental prerequisite' to its bad faith claim." Therefore, the circuit court dismissed the bad faith claim with prejudice. Water Well does not assert a bad faith claim in this court.

[10] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

¶12 This case requires the court to interpret an insurance policy to determine whether an insurer breached its duty to defend its insured. Interpretation of an insurance contract presents a question of law that we review de novo. Estate of Sustache v. Am. Family Mut. Ins. Co., 2008 WI 87, ¶18, 311 Wis. 2d 548, 751 N.W.2d 845.

### III. ANALYSIS

#### A. Typical Process used in Duty to Defend Determinations

¶13 Before reaching the dispositive issue in this case, we first set forth general principles governing interpretation of insurance policies as well as the process typically used by courts in duty to defend cases.

#### 1. General principles: Insurance contracts

¶14 Insurance policies are contracts that generally establish an insurer's "duty to indemnify the insured against damages or losses, and the duty to defend against claims for damages." Olson v. Farrar, 2012 WI 3, ¶27, 338 Wis. 2d 215, 809 N.W.2d 1. We interpret insurance policies in the same manner as other contracts——to give effect to the intent of the contracting parties. Am. Family Mut. Ins. Co. v. Am. Girl, Inc., 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65. We construe policy language as a reasonable person in the position of the insured would understand such language. Estate of Sustache, 311 Wis. 2d 548, ¶19.

¶15 Longstanding case law requires a court considering an insurer's duty to defend its insured to compare the four corners of the underlying complaint to the terms of the entire insurance

policy. See, e.g., id., ¶20; Doyle, 219 Wis. 2d at 284 & n.3; Grieb v. Citizens Cas. Co. of New York, 33 Wis. 2d 552, 558, 148 N.W.2d 103 (1967). The four-corners rule prohibits a court from considering extrinsic evidence when determining whether an insurer breached its duty to defend. Estate of Sustache, 311 Wis. 2d 548, ¶27; Fireman's Fund Ins. Co. of Wis. v. Bradley Corp., 2003 WI 33, ¶19, 261 Wis. 2d 4, 660 N.W.2d 666. We have, however, consistently explained that a court must liberally construe the allegations contained in the underlying complaint, assume all reasonable inferences from the allegations made in the complaint, and resolve any ambiguity in the policy terms in favor of the insured. Estate of Sustache, 311 Wis. 2d 548, ¶21.

¶16 We use a three-step process when comparing the underlying complaint to the terms of the policy in duty to defend cases.[11] Id., ¶¶22-23. First, a reviewing court

---

[11] To an extent, the three steps used in analyzing an insurance contract are the same whether a court is determining an insurer's duty to defend or its duty to indemnify. Compare Estate of Sustache v. Am. Fam. Mut. Ins. Co., 2008 WI 87, ¶¶22-23, 311 Wis. 2d 548, 751 N.W.2d 845 (detailing the three steps in the duty to defend context) with Am. Fam. Mut. Ins. Co. v. Am. Girl, Inc., 2004 WI 2, ¶24, 268 Wis. 2d 16, 673 N.W.2d 65 (explaining the three steps in the indemnity context). This is because a determination of whether an insurer breached its duty to defend depends on whether it could be found to have a duty to indemnify, if the plaintiff proves the allegations in the complaint. Olson v. Farrar, 2012 WI 3, ¶29, 338 Wis. 2d 215, 809 N.W.2d 1.

(continued)

determines whether the policy language grants initial coverage for the allegations set forth in the complaint. Id., ¶22. If the allegations set forth in the complaint do not fall within an initial grant of coverage, the inquiry ends. Id. However, if the allegations fall within an initial grant of coverage, the court next considers whether any coverage exclusions in the policy apply. Id., ¶23. If any exclusion applies, the court next considers whether an exception to the exclusion applies to restore coverage. Id. If coverage is not restored by an exception to an exclusion, then there is no duty to defend. See Am. Girl, Inc., 268 Wis. 2d 16, ¶24. If the policy, considered in its entirety, provides coverage for at least one of the claims in the underlying suit, the insurer has a duty to defend its insured on all the claims alleged in the entire suit. Fireman's Fund Ins. Co., 261 Wis. 2d 4, ¶21.

---

This, however, does not mean that a court's duty to defend analysis is the same as its consideration of indemnification. For example, unlike duty to defend determinations, extrinsic evidence is admissible in coverage disputes to prove (or disprove) the allegations set forth in the complaint. Id., ¶¶33-34. In addition, in indemnification disputes the insured has the initial burden to show the policy provides an initial grant of coverage "and if that burden is met the burden shifts to the insurer to show that an exclusion nevertheless precludes coverage." Day v. Allstate Indem. Co., 2011 WI 24, ¶26, 332 Wis. 2d 571, 798 N.W.2d 199. Logically, this same burden shifting is not implicated in duty to defend determinations because a court is comparing documents it has before it—the underlying complaint and the insurance policy—without resort to extrinsic evidence.

¶17 It is also well-established that an insurer's duty to defend its insured is broader than its duty to indemnify. Olson, 338 Wis. 2d 215, ¶29. This is because the four-corners rule dictates that the duty to defend is determined by "the nature of the claim alleged against the insured . . . even though the suit may be groundless, false or fraudulent." Grieb, 33 Wis. 2d at 558. "'[T]he insurer is under an obligation to defend only if it could be held bound to indemnify the insured, assuming that the injured person proved the allegations of the complaint, regardless of the actual outcome of the case.'" Id. (quoting 29A Am. Jur., Insurance § 1452, at 565 (1960)(emphasis added).

## 2. The four-corners rule

¶18 Water Well urges this court to establish a limited exception to the four-corners rule that would allow it to submit extrinsic evidence to dispute Consolidated's unilateral decision to refuse to defend Water Well in the Argonaut suit based on Consolidated's position that exclusions in the policy precluded coverage. Ultimately, Water Well asks this court to create an exception to the four-corners rule in duty to defend cases when (1) the policy provides an initial grant of coverage based on facts alleged in the complaint, (2) the insurer declines to defend its insured based on the application of specific policy exclusions but without seeking a coverage determination from the circuit court, and (3) the insured asserts that the underlying complaint is factually incomplete or ambiguous. We reject Water Well's request to create an exception to the four-corners rule.

11

¶19 In 1967, in Grieb, this court set forth the general rule that courts use to determine whether an insurer breached its duty to defend its insured. Grieb, 33 Wis. 2d at 558-59. Essentially, we rejected Grieb's argument that when an implied duty to defend arises from a policy's indemnity clause, the four-corners rule does not apply. Id. We held that an insurer's duty to defend, regardless of its origin, depends on a comparison of the four corners of the underlying complaint to the terms of the policy, reasoning:

> Whether a third-party suit comes within the coverage of this clause [the defense-coverage clause] or an implied duty to defend under an indemnity clause depends upon its allegations which are referred to as a general rule as the measure in the first instance. These allegations must state or claim a cause of action for the liability insured against or for which indemnity is paid in order for the suit to come within any defense coverage of the policy unless the express defense coverage is broader.

Id. at 557-58. After setting forth the four-corners rule, we stated "[t]here are at least four exceptions to the general rule determining the extent of the insurer's duty to defend and generally the insurer who declines to defend does so at his peril. These and allied problems are extensively covered in Anno., Liability Insurer——Duty to Defend, 50 A.L.R.2d 458." Grieb, 33 Wis. 2d at 558. These two sentences are the only discussion in Grieb regarding exceptions to the four-corners rule; we did not actually adopt or apply any of the exceptions

12

to the four-corners rule by this reference.[12] Instead, we held that Grieb's insurer had no duty to defend Grieb because the allegations in the complaint "could not be considered as stating a cause of action for liability for negligence, omissions, mistakes or errors." Id. at 559. In other words, we limited our determination of whether Grieb's insurer breached its duty to defend Grieb to the allegations in the four corners of the complaint: "It is not sufficient under [the insurance] policy that the facts alleged might under other circumstances be characterized as acts of unintentional negligence, error, mistake or omission." Id.

¶20 Since Grieb, Wisconsin courts, with one deviation in Berg v. Fall, 138 Wis. 2d 115, 405 N.W.2d 701 (Ct. App. 1987), have consistently stated that an insurer's duty to defend its insured depends on the allegations contained in the four corners

---

[12] The court of appeals later set forth the exceptions from the A.L.R. that Grieb referenced:

> [T]here are also a number of cases involving special situations not covered directly by the general rules. . . . These special situations exist particularly where there is a conflict of allegations and known facts, where the allegations are ambiguous or incomplete, where the allegations state facts partly within and partly outside the coverage of the policy, and finally where the allegations contain conclusions instead of statements of facts.

Sustache v. Am. Fam. Mut. Ins. Co., 2007 WI App 144, ¶11, 303 Wis. 2d 714, 735 N.W.2d 186, aff'd sub nom. Estate of Sustache v. Am. Family Mut. Ins. Co., 2008 WI 87, 311 Wis. 2d 548, 751 N.W.2d 845.

13

of the complaint. E.g., Olson, 338 Wis. 2d 215, ¶30 ("Wisconsin policy is clear. If the allegations in the complaint, construed liberally, appear to give rise to coverage, insurers are required to provide a defense until the final resolution of the coverage question by a court."); Estate of Sustache, 311 Wis. 2d 548, ¶20 ("The duty to defend is triggered by the allegations contained within the four corners of the complaint."); Doyle, 219 Wis. 2d at 284 ("In determining an insurer's duty to defend, we apply the factual allegations present in the complaint to the terms of the disputed insurance policy."); Newhouse v. Citizens Sec. Mut. Ins. Co., 176 Wis. 2d 824, 835, 501 N.W.2d 1 (1993) ("The duty to defend is triggered by the allegations contained within the four corners of the complaint."); Prof'l Office Bldgs., Inc. v. Royal Indem. Co., 145 Wis. 2d 573, 580-81, 427 N.W.2d 427 (Ct. App. 1998) ("[W]e believe the rule of Grieb v. Citizens Casualty Co., 33 Wis. 2d 552, 148 N.W.2d 103 (1967), and similar cases, is controlling and compels the determination that the duty to defend is dependent solely on the allegations of the complaint . . . .").

¶21 Despite this consistent application of the four-corners rule, the court of appeals in Berg considered extrinsic evidence to determine that an insurer had a duty to defend its insured. Berg, 138 Wis. 2d at 123. In Berg, Robin Berg alleged that James Fall punched him in the face. Id. at 117. Fall's insurer, State Farm Insurance Company, was joined as a defendant in the suit. Id. at 116. The central issue before the court of

14

appeals was whether the State Farm policy, which excluded coverage for "bodily injury 'expected or intended by the insured,'" applied where Fall claimed he acted in self-defense when he punched Berg. Id. at 117. The court of appeals held that (1) summary judgment was improper because a material fact——whether Fall acted in self-defense——was disputed and (2) "that a privileged act of self-defense is not excluded from coverage by State Farm's policy language." Id. at 119-20. The court of appeals concluded that State Farm had a duty to defend Fall even though Berg's complaint did not allege that Fall acted in self-defense. Id. at 122. While the court of appeals cited Grieb and the general rule——that the duty to defend is determined by reference to the four corners of the underlying complaint——it held that "[b]ecause the record shows facts sufficient to support an inference that Fall acted reasonably in self-defense, summary judgment was inappropriate and State Farm owes him a duty of defense." Id. at 123 (footnote omitted). By relying on extrinsic evidence, the court of appeals in Berg departed from the well-established four-corners rule.

¶22 We recognized this in Doyle when we soundly rejected an assertion, based on Berg, suggesting a court should look beyond the four corners of the complaint to determine whether an insurer had breached its duty to defend. Doyle, 219 Wis. 2d at 284 n.3. A year later, citing our footnote in Doyle, we again declined to recognize an exception to the four-corners duty to defend rule. Smith v. Katz, 226 Wis. 2d 798, 815-16, 595 N.W.2d 345 (1999).

¶23  In Sustache v. Am. Family Mut. Ins. Co., the court of appeals considered whether any exception to the four-corners rule existed in Wisconsin given that (1) Grieb referenced "at least four exceptions" to the four corners rule, id., 33 Wis. 2d at 558, (2) the court of appeals in Berg relied on extrinsic evidence to determine an insurer's duty to defend its insured, and (3) this court rejected an invitation to rely on Berg in Doyle and Smith, but did not explicitly overrule Berg's reliance on extrinsic evidence.  Sustache v. Am. Family Mut. Ins. Co., 2007 WI App 144, ¶¶11-13, 15-16, 303 Wis. 2d 714, 735 N.W.2d 186 aff'd sub nom. Estate of Sustache v. Am. Family Mut. Ins. Co., 2008 WI 87, 311 Wis. 2d 548, 751 N.W.2d 845.[13]  The court of appeals explained "the dilemma in this case goes beyond the tension between Doyle/Smith and Berg.  If we should hold that the supreme court has tacitly overruled Berg, it remains that Grieb, a supreme court opinion, is still on the books, and no court of appeals or supreme court opinion has ever called Grieb into question."  Sustache, 303 Wis. 2d 714, ¶17.  The court of appeals concluded that it was required to follow this court's most recent decisions regarding the application of the four-corners rule in duty to defend cases.  Id., ¶19.  It

---

[13] This court affirmed the court of appeals decision in Sustache on different grounds and did not specifically address whether Wisconsin law recognizes any exception to the four-corners rule.  Estate of Sustache, 311 Wis. 2d 548, ¶¶28-29 (determining that because the insurer provided an initial defense and the case had moved to a determination of coverage, the purpose of the four-corners rule had been served).

concluded that our opinions in <u>Doyle</u> and <u>Smith</u> "tacitly overruled . . . [our] recognition of the exceptions to the four-corners rule in <u>Grieb</u>. From that it logically follows that <u>Doyle</u> and <u>Smith</u> have also tacitly overruled <u>Berg</u>." <u>Sustache</u>, 303 Wis. 2d 714, ¶19. It concluded: "In sum, the four-corners rule is the law in Wisconsin when measuring an insurer's duty to defend, and the rule knows no exceptions until the supreme court unequivocally holds otherwise." <u>Id.</u>

¶24 We now unequivocally hold that there is no exception to the four-corners rule in duty to defend cases in Wisconsin. This position is consistent with long-standing precedent, including <u>Grieb</u>. Our passing reference in <u>Grieb</u> to "at least four exceptions to the general rule," 33 Wis. 2d at 558, should not be read as an adoption of any exception to the four corners rule. Rather, by citation to the American Law Reports, this passage in <u>Grieb</u> merely recognized that exceptions exist in other jurisdictions. That <u>Grieb</u> did not adopt any exceptions to the four-corners rule is further supported by the fact that <u>Grieb</u> never specifically enumerated or described any exception to the four-corners rule. Furthermore, our analysis in <u>Grieb</u> plainly reveals that we did not consider extrinsic evidence; rather, we applied the four-corners rule to conclude that the allegations against <u>Grieb</u> in the taxpayer's suit did not fall within the coverage provided by the insurance policy at issue. <u>Id.</u> at 559. We overrule any language in <u>Berg</u> suggesting that evidence may be considered beyond the four corners of the

complaint in determining an insurer's duty to defend its insured.[14]

¶25 We have applied the four-corners rule, without exceptions, in duty to defend cases for so long because it

---

[14] Appeals to fairness in factual scenarios similar to Berg, where the plaintiff's complaint alleges intentional conduct but the defendant argues self-defense, entreat courts to create an exception to the four-corners rule. Considerations of fairness cannot override the contractual terms of the insurance policy on which the duty to defend is based:

> In these cases, if negligence is not alleged, the plaintiff is only seeking damages because of an intentional act. If self-defense is proved, there is no recovery for intentional acts. Often a plaintiff will file a complaint that alleges both negligence and intentional conduct. With this allegation of negligence, the insurance company will have a duty to defend. . . . If the plaintiff stands fast on an intentional-act-or-nothing position, there is no coverage, nor is there a duty to defend or indemnify. . . . There is no compelling need to carve out an exception to the complaint test for defendant-insureds who end up in fistfights with plaintiffs who do not allege the insured was negligent.

Sheila M. Sullivan et al., Anderson on Wisconsin Insurance Law § 7.27 at 29-30 (7th ed. 2015). In this case, the CGL Policy relieves Consolidated of its duty to defend Water Well when the suit seeks damages for property damage to which the policy does not apply. Because the "Your Product" exclusion negates coverage, the policy does not apply to the claims made in Argonaut's complaint.

generally favors Wisconsin insureds.[15] The rule ensures that courts are able to efficiently determine an insurer's duty to defend, which results in less distraction from the merits of the underlying suit. Also, the four-corners rule supports the policy that an insurer's duty to defend is broader than its duty to indemnify. Estate of Sustache, 311 Wis. 2d 548, ¶20. That is because "[i]t is the nature of the claim alleged against the insured which is controlling even though the suit may be groundless, false or fraudulent." Grieb, 33 Wis. 2d at 558. Adherence to "[t]he four-corners rule 'ensure[s] that insurers do not frustrate the expectations of their insureds by [prematurely] resolving the coverage issue in their own favor[.]'" Olson, 338 Wis. 2d 215, ¶32 (quoting Baumann v. Elliot, 2005 WI App 186, ¶10, 286 Wis. 2d 667, 704 N.W.2d 361) (brackets in original). Without the four-corners rule, insurers

---

[15] We acknowledge that the four-corners rule benefits the insurer as well because it does "not require an insurer to speculate beyond the written words of the complaint in order to imagine a claim that a plaintiff might be making or to determine all potential issues that could be sought when the insurer is evaluating its duty to defend." State Farm Fire & Cas. Co. v. Easy PC Sols., LLC, 2016 WI App 9, ¶8, 366 Wis. 2d 629, 874 N.W.2d 585. The duty to defend is grounded in the insurance contract entered between the insurer and its insured. Recognizing exceptions to the four-corners rule would require the insurer to not only draw reasonable inferences from the language of the complaint in evaluating its contractual duty to defend, but to imagine claims the plaintiff might have made. Imposing this judicially-created burden on insurers would, in practical application, rewrite the contractual duty to defend to be triggered whenever any claim is made rather than only those claims covered under the actual policy terms.

would be incentivized to outright refuse to defend their insureds and hope that the facts later revealed that no coverage existed. Olson, 338 Wis. 2d 215, ¶32. The end result of strict adherence to the four-corners rule is that "the insurer may have no duty to defend a claim that ultimately proves meritorious against the insured because there is no coverage for that claim. Conversely, the insurer may have a clear duty to defend a claim that is utterly specious because, if it were meritorious, it would be covered." Smith, 226 Wis. 2d 798, ¶20.

¶26 The four-corners rule ultimately favors insureds in another way. Even if a plaintiff's first complaint does not contain allegations that trigger the duty of a defendant's insurer to defend, a plaintiff has both the opportunity and the incentive to file an amended complaint when discovery results in additional facts that, if alleged in an amended complaint, would trigger a duty to defend: "[I]f a complaint does not allege a covered claim, the true facts will come out in discovery. Sooner or later those facts will be alleged in an amended complaint because the plaintiff will want coverage for the defendant-insured. When that happens, the duty to defend is triggered." Sheila M. Sullivan et al., Anderson on Wisconsin Insurance Law § 7.27 at 29 (7th ed. 2015).

¶27 Water Well asserts that strictly applying the four-corners rule encourages insurers to refuse to defend insureds in close cases. We disagree. We continue to strongly encourage insurers to follow one of the judicially-preferred approaches rather than make a unilateral determination to refuse to defend

an insured. See Liebovich v. Minnesota Ins. Co., 2008 WI 75, ¶55, 310 Wis. 2d 751, 751 N.W.2d 764. For example:

(1) An insurer may request a bifurcated trial on the issue of coverage and move to stay all proceedings on liability until a coverage determination is made. Id.; Elliot v. Donahue, 169 Wis. 2d 310, 318, 485 N.W.2d 403 (1992). Under this approach, "the insurance company runs no risk of breaching its duty to defend." Newhouse, 176 Wis. 2d at 836.

(2) An insurer may enter into "a nonwaiver agreement in which the insurer would agree to defend, and the insured would acknowledge the right of the insurer to contest coverage." Grube v. Daun, 173 Wis. 2d 30, 75, 496 N.W.2d 106 (Ct. App. 1992), overruled on other grounds, Marks, __ Wis. 2d __, ¶75. An insurer may also proceed under a reservation of rights under which the insured provides and controls its own defense, but the insurer remains liable for incurred legal costs. Id.

(3) Finally, an insurer may choose to provide an initial defense and seek a declaratory judgment on coverage.[16] Liebovich, 310 Wis. 2d 751, ¶55.

---

[16] We note that:

An insurance company breaches its duty to defend if a liability trial goes forward during the time a no coverage determination is pending on appeal and the

(continued)

21

We reiterate:

> While these procedures are not absolute requirements, we strongly encourage insurers wishing to contest liability coverage to avail themselves of one of these procedures rather than unilaterally refuse to defend. A unilateral refusal to defend without first attempting to seek judicial support for that refusal can result in otherwise avoidable expenses and efforts to litigants and courts, deprive insureds of their contracted-for protections, and estop insurers from being able to further challenge coverage.

Id.

¶28 An insurer also has the option to "[d]eny the tender of defense and state the grounds for deciding that the complaint does not trigger any obligation to defend under the policy." Sheila M. Sullivan et al., Anderson on Wisconsin Insurance Law § 7.54 at 51 (7th ed. 2015). If, however, an insurer chooses this option "it does so at its own peril." Elliot, 169 Wis. 2d at 321. By declining to defend an insured, an insurer opens itself up to a myriad of adverse consequences if its unilateral duty to defend determination turns out to be wrong. For example, an insurer that breaches its duty to defend is liable for all costs naturally flowing from the breach. Newhouse, 176 Wis. 2d at 837; Maxwell v. Hartford Union High

---

> insurance company does not defend its insured at the liability trial. When an insurer relies on a lower court ruling that it has no duty to defend, it takes the risk that the ruling will be reversed on appeal.

Newhouse v. Citizens Sec. Mut. Ins. Co., 176 Wis. 2d 824, 836, 501 N.W.2d 1 (1993).

22

Sch. Dist., 2012 WI 58, ¶¶55-56, 341 Wis. 2d 238, 814 N.W.2d 484 (explaining that a breach of the duty to defend results in damages naturally flowing from that breach, but does not expand coverage). This liability is not limited to policy limits:

> Damages which naturally flow from an insurer's breach of its duty to defend include: (1) the amount of the judgment or settlement against the insured plus interest; (2) costs and attorney fees incurred by the insured in defending the suit; and (3) any additional costs that the insured can show naturally resulted from the breach.

Newhouse, 176 Wis. 2d at 838. Liability for costs and attorneys fees may potentially be greater than what the insurer would have paid had it defended its insured in the first instance because an insurer that refuses to defend its insured cedes control of the defense to its insured and is liable for all reasonable expenses. Patrick v. Head of the Lakes Co-op Elec. Ass'n, 98 Wis. 2d 66, 72-23, 295 N.W.2d 205 (1980) ("As long as [the] defense is reasonable and coverage is found, the insurer must pay for the defense.").

¶29 In addition, an insurer that breaches its duty to defend its insured places itself at risk that its insured will pursue a successful first-party bad faith action against it. See Anderson v. Cont'l Ins. Co., 85 Wis. 2d 675, 687, 271 N.W.2d 368 (1978) (recognizing the intentional tort of bad faith); Brethorst v. Allstate Prop. & Cas. Ins. Co., 2011 WI 41, ¶5, 334 Wis. 2d 23, 798 N.W.2d 467 (holding that a breach of contract is a prerequisite for a first-party bad faith claim levied against an insurer). In a successful first-party bad

23

faith action against an insurer, an insured may recover punitive damages.  See Weiss v. United Fire & Cas. Co., 197 Wis. 2d 365, 393, 541 N.W.2d 753 (1995).

¶30  In sum, we follow our long-standing precedent that duty-to-defend cases are governed by the four-corners rule, with no exceptions.[17]

### 3.  The policy terms

¶31  Consolidated's duty to defend Water Well originates from the CGL Policy, under which Consolidated "will have the right and duty to defend the insured against any 'suit' seeking [bodily injury or property] damages.  However, [Consolidated] will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."  Wisconsin courts determine whether an insurer breached its duty to defend its insured by comparing the four corners of the underlying complaint to the terms of the insurance policy.  See Doyle, 219 Wis. 2d at 284.  Water Well argues that if this court does not recognize any exception to the four-corners rule, then it should

---

[17] Although the four-corners rule supports the well-established principle that an insurer's duty to defend its insured is broader than its duty to indemnify, Olson, 338 Wis. 2d 215, ¶29, we recognize there may be isolated instances in which an insurer has no duty to defend based on the complaint's allegations, but nevertheless owes a duty to indemnify based on extrinsic evidence considered later during a coverage determination.  Our decision in this case is not influenced by hypothetical possibilities.  Regardless, in such situations the insured will obtain its bargained-for coverage.

limit consideration of the policy to only those terms governing an initial grant of coverage. Consistent with Marks, we reject this argument.  In Marks, we held that in duty to defend cases a court must compare the four corners of the complaint to the terms of the entire policy, including exclusions.  See Marks, __ Wis. 2d __, ¶76.  We therefore analyze next whether Consolidated breached its duty to defend Water Well by comparing the four corners of the Argonaut complaint to the entire insurance policy.

B.  Duty to Defend Comparison: Complaint to the Policy Terms

1.  The Argonaut complaint

¶32 Argonaut, Waukesha's insurer, filed suit against Water Well alleging negligence and breach of contract.  The complaint, in pertinent part, provides:

> 10. Upon information and belief, from on or about May to September of 2009, Water Well installed the Well Pump, including but not limited to performing inspections and repairs of the well, providing a new Centrilift pump, seal, and motor, providing new heavy wall column pipe, providing new pump cable, providing flow sleeve if required, providing check valves as needed, providing pipe couplings as needed, rethreading pipe as needed, providing two new air lines, reassembling pipe work, performing a video log, and setting-up and testing the pumping equipment and testing the pump ("Original Installation").

> 11. Upon information and belief, in or about September to December of 2009, Water Well reinstalled the Well Pump, including but not limited to, cutting and rethreading twelve-inch heavy wall pipe, replacing couplings, replacing the seal, and replacing the motor.

> 12. On or about January of 2010, Water Well also reinstalled the Well Pump, including but not limited

25

to, cutting and rethreading at least 17 ends, installing at least 7 new couplings, and installing at least 1 new fourteen-foot section of pipe (collectively, the "Reinstallations").

. . .

14. Upon information and belief, while performing the Reinstallations, Water Well failed to install two setscrews, where locations for two setscrews were located to secure the pipe joint at each end, which allowed operating torques and vibrations to cause the Well Pump to rotate and unthread from the pipe column and caused the Well Pump to fall to the bottom of the well.

15. As a direct and proximate result of the foregoing, on or about February 6, 2011, the Well Pump unthreaded and separated from the pipe column and caused the Well Pump, including the motor, to fall to the bottom of the approximately 1910-foot-deep well.

. . .

18. Upon information and belief, Water Well, its agents, employees and representatives, had a duty to reasonably and prudently install, configure, inspect, test, and/or perform the Reinstallations in such a manner as to prevent operating torques and vibrations from causing the Well Pump to rotate and unthread from the pipe column and cause the Well Pump to fall to the bottom of the well.

19. Upon information and belief, Water Well, its agents, employees and representatives breached that duty by failing to reasonably and prudently install, configure, inspect, test, and/or perform the Reinstallations in such a manner as to prevent operating torques and vibrations from causing the Well Pump to rotate and unthread from the pipe column and cause the Well Pump to fall to the bottom of the well.

20. Specifically, Water Well breached that duty by failing to install two setscrews, where locations for two setscrews were located to secure the pipe joint at each end, which allowed operating torques and vibrations to cause the Well Pump to rotate and

26

unthread from the pipe column and caused the Well Pump to fall to the bottom of the well.

21. Upon information and belief, Water Well, its agents, employees and representatives also breached that duty by failing to reasonably and prudently perform the Reinstallations so as to discover the hazardous condition that the Well Pump's operation was causing the pipe threads to become excessively worn, was indicating that the pipe threads were possibly out of round, was causing marks from a part dragging axially over the pipe thread tips, and/or that the pump was pulling out of collar; and, this hazardous condition of the Well Pump's operation allowed operating torques and vibrations to cause the Well Pump to rotate and unthread from the pipe column and caused the Well Pump to fall to the bottom of the well.

## 2. The CGL policy

¶33 The parties agree that Consolidated's policy with Water Well provides an initial grant of coverage for the allegations contained in Argonaut's complaint. We therefore move to step two and compare pertinent paragraphs of the Argonaut complaint, described above, to the "Your Product" exclusion found in the policy and invoked by Consolidated to deny coverage. Because we conclude that the "Your Product" exclusion applies, we do not consider whether another exclusion upon which Consolidated relies—the "Your Work" exclusion—also applies. When one exclusion applies to preclude coverage, the inapplicability of another exclusion does not restore coverage. See Am. Girl, Inc., 268 Wis. 2d 16, ¶24 ("We analyze each exclusion separately; the inapplicability of one exclusion will

not reinstate coverage where another exclusion has precluded it.").[18]

### a.  "Your Product" exclusion

¶34  The CGL policy contains an exclusion for "Damage To Your Product."  The "Your Product" exclusion precludes coverage for: "'Property damage' to 'your product' arising out of it or any part of it."  "Property damage" is defined by the CGL policy to include "[p]hysical injury to tangible property" as well as "[l]oss of use of tangible property that is not physically injured."  In addition, the policy defines "Your Product" to include "goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by" the insured, Water Well.

¶35  Water Well argues that the "Your Product" exclusion does not apply because the Argonaut complaint is ambiguous as to what property was actually damaged when the well pump unthreaded from the pipe column and fell to the bottom of the well, that it is reasonable to infer existing pipes were also damaged, and that any uncertainty must be resolved in Water Well's favor. Contrary to Water Well's position, we conclude that the complaint does not contain any ambiguity as to what property was damaged.

¶36  The Argonaut complaint contains no allegation that any damage occurred to anything other than Water Well's products.

---

[18] We decide cases on the narrowest grounds possible. Maryland Arms Ltd. P'ship v. Connell, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15.

The complaint alleges that Water Well's failure to install two setscrews resulted in the well pump unthreading from the pipe column, which caused the well pump to fall to the bottom of the well. The Argonaut complaint defines the well pump as "[A] Baker Hughes Centrilift Model WME2700 5-stage submersible vertical turbine pump, and the pumping system, including but not limited to, a column of pipes, screws, couplings, a pump, a seal, a motor, and pump cable . . . ." Paragraph 10 of the complaint details the products Water Well allegedly provided, which included each of the components specifically detailed in the definition of the well pump: the pump, seal, motor, heavy wall column pipe, and pump cable. In sum, the complaint alleges that the well pump fell to the bottom of the well, the well pump is comprised of various components, and Water Well provided each of the well pump components. We see no ambiguity in these allegations.

¶37 Further, there is absolutely no indication in the complaint that any damage occurred to anything other than the well pump. Water Well argues that an inference can be made from the allegations in the complaint that damage occurred to preexisting pipes that would not fall within the "Your Product" exclusion. Water Well points to allegations in the complaint that it performed rethreading of pipes and argues that these allegations establish doubt about whether the "Your Product" exclusion applies. We disagree and see nothing in the Argonaut complaint suggesting that any preexisting products, including preexisting pipes, were damaged. Instead, the Argonaut

29

complaint alleges damages to the well pump alone and nothing in the definition of the well pump suggests that it was comprised of any preexisting products.

¶38 The inference Water Well urges us to draw would require the type of guess-work and supposition repeatedly rejected in Wisconsin's duty-to-defend jurisprudence. See, e.g., Sch. Dist. of Shorewood v. Wausau Ins. Cos., 170 Wis. 2d 347, 374, 488 N.W.2d 82, 92 (1992), abrogated on other grounds by Johnson Controls, Inc. v. Emp'rs Ins., 2003 WI 108, 264 Wis. 2d 60, 665 N.W.2d 257; State Farm Fire & Cas. Co. v. Easy PC Sols., LLC, 2016 WI App 9, ¶8, 366 Wis. 2d 629, 874 N.W.2d 585. Again we reject the notion "that insurers must speculate beyond the written words of the complaint and imagine what kinds of claims for damages the plaintiffs are actually making." Midway Motor Lodge v. Hartford Ins. Grp., 226 Wis. 2d 23, 36, 593 N.W.2d 852 (Ct. App. 1999). "Insurers are not mind readers; they are not able to determine all the potential issues that a plaintiff could have sought for every complaint filed against them." Id. A liberal construction of the complaint does not mean the court should imagine facts not even loosely pled by the plaintiff. Instead, a reasonable inference is a conclusion reached on the basis of evidence and reasoning, not imagination or speculation. See Inference The American Heritage Dictionary of the English Language 899 (5th ed. 2011) (defining "inference" as "[t]he act or process of deriving logical conclusions from premises known or assumed to be true[]" and "[t]he act of reasoning from factual knowledge or

30

evidence."). We cannot reasonably infer from the language of the complaint any damage to property other then the well pump.

¶39 In comparing the four corners of the complaint to the policy terms, we determine that the "Your Product" exclusion applies. There are no exceptions to the "Your Product" exclusion. Therefore, coverage is barred, Consolidated did not breach its duty to defend Water Well in the Argonaut action, and Consolidated is entitled to summary judgment as a matter of law.

## IV.  CONCLUSION

¶40 We conclude that the longstanding four-corners rule in duty to defend cases requires the court to compare the language in the complaint to the terms of the entire insurance policy, without considering extrinsic evidence, even when an insurer unilaterally declines to defend its insured. We also conclude that the "Your Product" exclusion in the CGL policy applies and no exceptions to this exclusion restore coverage; therefore, based on the allegations set forth in the four corners of the complaint, no coverage exists under the policy. Accordingly, Consolidated did not breach its duty to defend Water Well in the Argonaut action and Consolidated is entitled to summary judgement as a matter of law.

*By the Court.*—The decision of the court of appeals is affirmed.

¶41 ANN WALSH BRADLEY, J. *(dissenting).* I agree with the majority that the four-corners rule includes consideration of exclusions as well as exceptions to those exclusions in an insurance policy. I write separately because I disagree with the majority's conclusion to foreclose a narrow exception to the four-corners rule. Majority op., ¶24.

¶42 The majority's decision today is at loggerheads with the national trend. It puts Wisconsin among the 14 and ever dwindling number of jurisdictions that have clearly declined to recognize any exceptions to the four-corners rule.

¶43 In contrast, a majority of states allow for exceptions to the rule. The proposed exception here is narrower in scope and more modest in comparison to the exceptions adopted by many other jurisdictions.

¶44 But it is more than merely being out of step with a national trend that compels the conclusion that the majority opinion is infirm. It turns a blind eye to basic and heretofore well-recognized principles of insurance law: the duty to investigate, privity, and the broad application of the duty to defend.

¶45 Most egregious, however, is that the majority's approach is offensive to our system of justice. In a different context, when a court gives the jury its charge at the close of the trial, the court states: "let your verdict speak the truth,

whatever the truth may be."[1] The majority opinion advises to the contrary.

¶46 According to the majority, facts known to the insurer that could support a duty to defend cannot be considered. Rather, the insurer has license to deny its duty to defend unless those known facts appear within the four corners of the complaint. A system of justice cannot countenance a rule that encourages insurers to defy reality by ignoring known facts beneficial to its insured. Such a rule distorts rather than promotes the concepts of fairness and justice.

¶47 Contrary to the majority, I conclude that when a complaint is factually incomplete or ambiguous, Wisconsin should adopt the narrow known fact exception to the four-corners rule as presented by Water Well.

¶48 I also conclude that the "Your Product" exclusion does not bar coverage. In reaching an opposite conclusion, the majority pays lip service to, but does not follow the longstanding rule that courts must liberally construe the allegations of the complaint and assume all reasonable inferences in favor of the insured.

¶49 Finally, I conclude that the "Your Work" exclusion likewise does not preclude coverage because the subcontractor exception to the "Your Work" exclusion applies. Accordingly, I respectfully dissent.

---

[1] Wis JI—Civil 191 at 3 (2016).

I

¶50 In reaching its "unequivocal" conclusion that there are no exceptions to the four-corners rule, the majority fails to account for the limited circumstances in which refusing to consider known facts extrinsic to the complaint would unfairly deny an insured the benefit of a defense to which it is entitled. Majority op., ¶24.

¶51 Water Well seeks a limited exception to the four-corners rule in cases where: (1) the policy provides an initial grant of coverage based on facts alleged in the complaint; (2) the insurer denies a duty to defend its insured based on the application of specific policy exclusions but without seeking a coverage determination from a court; and (3) the insured asserts that the underlying complaint is factually incomplete or ambiguous. See majority op., ¶2.

¶52 The limited exception at issue here is consistent with the national trend to allow for exceptions to the four-corners rule. See 14 Steven Plitt et al., Couch on Insurance § 200:17 at 200-30 (3d ed. 2015) ("A modern trend is for insurers to conduct a reasonable investigation of the claims prior to making a determination on the duty to defend a particular lawsuit. Consequently, some jurisdictions look to actual knowledge of facts or extrinsic facts, in addition to the allegations of the complaint, when determining an insurer's duty.").

3

¶53 A majority of states allow for exceptions to the four-corners rule.[2] Water Well seeks an exception that is narrower in

---

[2] Currently, thirty-one states allow for exceptions to the four-corners rule in determining whether a duty to defend exists. Chandler v. Alabama Mun. Ins. Co., 585 So. 2d 1365, 1367 (Ala. 1991); Williams v. GEICO Cas. Co., 301 P.3d 1220, 1225 (Alaska 2013); Regal Homes, Inc. v. CNA Ins., 217 P.3d 610, ¶19 (Ariz. Ct. App. 2007); Safeco Ins. Co. of America v. Fireman's Fund Ins. Co., 55 Cal. Rptr. 3d 844, 850 (Ct. App. 2007); Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co., 876 A.2d 1139, 1145-1146 (Conn. 2005); Shafe v. Am. States Ins. Co., 653 S.E.2d 870, 874 (Ga. 2007); Sentinel Ins. Co. v. First Ins. Co. of Haw., 875 P.2d 894, 905 (Haw. 1994); Shriver Ins. Agency v. Utica Mut. Ins. Co., 750 N.E.2d 1253, 1259 (Ill. 2001); Talen v. Emp'rs Mut. Cas. Co., 703 N.W.2d 395, 406 (Iowa 2005); Miller v. Westport Ins. Corp., 200 P.3d 419, 424 (Kan. 2009); Aetna Cas. & Sur. Co. v. Cochran, 651 A.2d 859, 864 (Md. 1995); Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 788 N.E.2d 522, 530 (Mass. 2003); Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co., 550 N.W.2d 475, 452 (Mich. 1996); Pedro Cos. v. Sentry Ins., 518 N.W.2d 49, 51 (Minn. Ct. App. 1994); Auto. Ins. Co. of Hartford v. Lipscomb, 75 So.3d 557, 559 (Miss. 2011); Allen v. Cont'l W. Ins. Co., 436 S.W.3d 548, 552-53 (Mo. 2014); Revelation Industries, Inc. v. St. Paul Fire & Marine Ins. Co., 206 P.3d 919, 926 (Mont. 2009); Peterson v. Ohio Cas. Group, 724 N.W.2d 765, 773-774 (Neb. 2006); Ross v. Home Ins. Co., 773 A.2d 654, 657 (N.H. 2001); Abouzaid v. Mansard Gardens Assocs., LLC, 23 A.3d 338, 347 (N.J. 2011); Sw. Steel Coil, Inc. v. Redwood Fire & Casualty Ins. Co., 148 P.3d 806, 812 (N.M. 2006); Cumberland Farms, Inc. v. Tower Grp., Inc., 28 N.Y.S.3d 119, 122 (N.Y. App. Div. 2016); Duke University v. St. Paul Fire & Marine Ins. Co., 386 S.E.2d 762, 764 (N.C. 1990); Great Am. Ins. Co. v. Hartford Ins. Co., 621 N.E.2d 796, 798 (Ohio 1993); First Bank of Turley v. Fid. & Deposit Ins. Co., 928 P.2d 298, 303 (Okla. 1996); City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund, 677 S.E.2d 574, 578-79 (S.C. 2009); State Farm Fire & Cas. Co. v. Harbert, 741 N.W.2d 228, 234 (S.D. 2007); Fire Ins. Exchange v. Estate of Therkelsen, 27 P.3d 555, ¶¶24-25 (Utah 2001); R.L. Vallee, Inc. v. Am. Intern. Specialty Lines Ins. Co., 431 F. Supp. 2d 428, 438 (D. Vt. 2006); Campbell v. Ticor Title Ins. Co., 166 Wash. 2d 466, 471 (Wash. 2009); Farmer & Mechs. Mut. Ins. Co. of W. Va. v. Cook, 557 S.E.2d 801, 806 (W. Va. 2001).

(continued)

scope and more modest in comparison to the exceptions adopted in many other jurisdictions. For example, in Washington, there are two exceptions to the four-corners rule. <u>Woo v. Fireman's Fund Ins. Co.</u>, 164 P.3d 454, 459 (Wash. 2007). First, if it is not clear from the complaint that the policy provides coverage, the insurer must investigate and give the insured the benefit of the doubt that there is a duty to defend. <u>Id.</u>

¶54 Second, as is the case here, if the allegations in the complaint conflict with facts known or readily ascertainable by the insurer, or if the allegations in the complaint are ambiguous or inadequate, facts outside the complaint may be considered. <u>Id.</u> Additionally, although extrinsic facts may trigger the duty to defend, an insurer may not rely on extrinsic facts to deny the duty to defend. <u>Id.</u>

¶55 Kansas provides another example. In <u>Miller v. Westport Ins. Corp.</u>, 200 P.3d 419, 424 (Kan. 2009), the court explained that an insurer "must look beyond the effect of the

---

In four states, because of conflicting cases, it is unclear whether they allow for exceptions to the four-corners rule. <u>Compare</u> <u>Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.</u>, 90 P.3d 814, 829 (Colo. 2004), <u>with</u> <u>United Fire & Cas. Co. v. Boulder Plaza Residential, LLC</u>, 633 F.3d 951, 960-61 (10th Cir. 2011); <u>compare</u> <u>Transamerica Ins. Services v. Kopko</u>, 570 N.E.2d 1283, 1285 (Ind. 1991), <u>with</u> <u>Ind. Farmers Mut. Ins. Co. v. N. Vernon Drop Forge, Inc.</u>, 917 N.E.2d 1258, 1268 (Ind. Ct. App. 2009) (citing <u>Auto-Owners Ins. Co. v. Harvey</u>, 842 N.E.2d 1279, 1291 (Ind. 2006); <u>compare</u> <u>James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 814 S.W.2d 273, 279 (Ky. 1991), <u>with</u> <u>Lenning v. Commer. Union Ins. Co.</u>, 260 F.3d 574, 581 (6th Cir. 2001); <u>compare</u> <u>GuideOne Elite Ins. Co. v. Fielder Road Baptist Church</u>, 197 S.W.3d 305, 308 (Tex. 2006), <u>with</u> <u>Weingarten Realty Mgmt Co. v. Liberty Mut. Fire Ins. Co.</u>, 343 S.W.3d 859 (Tex. Ct. App. 2011).

pleadings and must consider any facts brought to its attention or any facts which it could reasonably discover in determining whether it has a duty to defend." Under this approach, "the universe of information from which th[e] potential [for coverage] must be ascertained is much greater than the universe used in an approach limited to the . . . pleading and the applicable insurance policy." Id. (internal citations and quotation omitted).

II

¶56 Not only is the majority opinion out of step with the national trend and at odds with the majority of states, it also contravenes basic principles of insurance law.

A

¶57 A basic principle of insurance law is that the insurer is to investigate the facts when a claim is made. Trinity Evangelical Lutheran Church and Sch.-Freistadt v. Tower Ins. Co., 2003 WI 46, ¶54, 261 Wis. 2d 333, 661 N.W.2d 789.

¶58 This principle is supported by Marks v. Houston Cas. Co., 2016 WI 53, ¶41, __ Wis. 2d __, __ N.W.2d __, which is being released concurrently with this decision today. In Marks, we explain that "'[t]he applicability of an exclusion, however, is rarely obvious from the allegations in the complaint. Insurers often have to rely on investigation, discovery and other information not stated in the complaint to determine whether an exclusion applies.'" Id. (citing Peter F. Mullaney, Liability Insurers' Duty to Defend, Wis. Law., at 10-11 (July 1995)).

6

¶59 The two opinions released concurrently today appear facially inconsistent in regards to the duty to investigate. Marks supports the duty to investigate, and the majority here discards it. In contravening this basic principle of insurance law, the majority incentivizes an insurer to disregard its factual investigation and to pretend that it cannot see a known fact which would give rise to a duty to defend.

¶60 The exceptions to the four-corners rule in other jurisdictions recognize this basic principle. For example, in Washington, if it is not clear from the complaint that the policy provides coverage, the insurer "must investigate" and give the insured the benefit of the doubt that there is a duty to defend. Woo, 164 P.3d at 459.

¶61 Likewise, in Oklahoma an insurer has a duty to defend "whenever it ascertains the presence of facts that give rise to the potential of liability under the policy." First Bank of Turley v. Fid. and Deposit Ins. Co. of Md., 928 P.2d 298, 303 (1996). An insurer's duty to defend is determined on the basis of information provided to the insurer from the pleadings, the insured, and other sources available to the insurer. Id.

B

¶62 Also integral to insurance law, and contract law in general, is the concept of privity. As Judge Riley aptly explains in his dissent below, the approach taken by the majority negates the concept of privity. Water Well Sols. Serv. Grp. Inc. v. Consol. Ins. Co., 2015 WI App 78, ¶24, 365 Wis. 2d 223, 871 N.W.2d 276 (Reilly, P.J. dissenting). He

7

admonishes that "[i]t is absurd to allow an entity that has no privity of contract to dictate whether the contract provides defense and coverage." Id. Emphasizing the problem with the unilateral control of a third-party, he observes that the majority's approach "allows a litigant who is not a party to a contract of insurance to unilaterally control whether . . . the [] policy provides coverage when that litigant has no privity in the contract." Id., ¶21.

¶63 Yet again, other jurisdictions allow for an exception to the four-corners rule when a third-party not in privity to an insurance contract fails to allege facts relevant to the duty to defend in its complaint. As the Supreme Court of Montana explained, an insurer cannot ignore knowledge of facts because a complaint drafted by a third-party does not allege facts of which the insurer has knowledge. Revelation Indus. Inc. v. St. Paul Fire & Marine Ins. Co., 206 P.3d 919, 928 (Mont. 2009). Under these circumstances, an insurer may not "ignore information in its possession that may give rise to coverage simply because the complaint fails to recite it, and thereupon refuse to defend." Id.

C

¶64 A third basic principle of insurance law is that the duty to defend is broader than the duty to indemnify. Fireman's Fund Ins. Co. of Wis. v. Bradley Corp., 2003 WI 33, ¶20, 261 Wis. 2d 4, 660 N.W.2d 666. Nevertheless, the majority opinion does just the opposite and circumscribes the duty to defend.

8

¶65 The Connecticut Supreme Court eschewed the absolutist approach that the majority now embraces and determined that such an approach would narrow the duty to defend. It explained that a "wooden application" of the four-corners rule would "render the duty to defend narrower than the duty to indemnify." Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co., 876 A.2d 1139, 1146 (Conn. 2005); see also Fitzpatrick v. Am. Honda Motor Co., 575 N.E.2d 90, 92 (N.Y. 1991) ("where the insurer is attempting to shield itself from the responsibility to defend despite its actual knowledge that the lawsuit involves a covered event, wooden application of the 'four corners of the complaint' rule would render the duty to defend narrower than the duty to indemnify——clearly an unacceptable result."). Thus, the Hartford court reasoned that "the sounder approach is to require the insurer to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage." Id.

### III

¶66 Prior Wisconsin decisions have likewise considered an exception to the four-corners rule when the allegations of the complaint conflict with the known facts of the case or where the allegations are ambiguous or incomplete:

> [T]here are also a number of cases involving special situations not covered directly by the general rules . . . These special situations exist particularly where there is a conflict of allegations and known facts [and] where the allegations are ambiguous or incomplete . . . .

Estate of Sustache, 2007 WI App 144, ¶11, 303 Wis. 2d 714, 735 N.W.2d 186, aff'd sub nom. Estate of Sustache v. Am. Family Mut.

Ins. Co., 2008 WI 87, 311 Wis. 2d 548, 751 N.W.2d 845 (citation omitted); see also Grieb v. Citizens Cas. Co. of New York, 33 Wis. 2d 552, 148 N.W.2d 103 (1967).

¶67 As the court of appeals explained in Sustache, it is reasonable to consider a situation where the facts of a case merit a defense, but the third-party complaint fails to allege those facts. 303 Wis. 2d 714, ¶20. In that situation "it would seem that the insured should be entitled to a defense for which the insurer has been paid a premium. The four-corners rule shuts down that entitlement." Id.

¶68 Furthermore, Wisconsin has already allowed known facts extrinsic to the complaint to be considered in limited exceptions to the four-corners rule. In Berg v. Fall, 138 Wis. 2d 115, 122 405 N.W.2d 701 (Ct. App. 1987), the court of appeals considered extrinsic facts because there was a conflict between the allegations in the complaint and the actual facts of the case. The Berg court emphasized that an insurer's duty to defend may require consideration of extrinsic facts when "the pleadings allege facts that are within an exception to a policy but the true facts are within, or potentially within, policy coverage and are known or are reasonably ascertainable by the insurer." Id. at 122-123 (citing 7C Appleman, Insurance Law and Practice, sec. 4683 at 56 (1979)).

¶69 Admittedly, this court has previously declined to follow Berg. In a footnote in Doyle v. Engelke, we explained that Berg is contrary to a "long line of cases in this state which indicate that courts are to make conclusions on coverage

10

issues based solely on the allegations within the complaint." 219 Wis. 2d 277, 284 n.3, 580 N.W.2d 245 (1998); see also Smith v. Katz, 226 Wis. 2d 798, 815-16, 595 N.W.2d 345 (1999). However, none of these decisions foreclosed the possibility of allowing for a know fact exception in cases such as this when the allegations in the complaint are incomplete or ambiguous.[3]

IV

¶70 Rather than acknowledge that there are limited circumstances in which a duty to defend analysis may allow for consideration of known facts extrinsic to the complaint, the majority asserts that its rigid four-corners analysis benefits an insured even after its insurer unilaterally denies coverage. Majority op., ¶26. According to the majority, under the four-corners rule "a plaintiff has both the opportunity and the incentive to file an amended complaint" if discovery results in additional facts that would trigger a duty to defend. Id. Thus, the majority reasons that because a plaintiff will want coverage for the defendant-insured, it will amend its complaint to trigger the duty to defend. Id. (citing Sheila M. Sullivan

---

[3] In Estate of Sustache, the court of appeals examined whether the exceptions to the four-corners rule acknowledged in Griebe had been foreclosed by Doyle and Smith, but ultimately concluded only that "this issue warrants supreme court comment at some point in the future." Estate of Sustache, 2007 WI App 144, ¶20, 303 Wis. 2d 714, 735 N.W.2d 186.

et al., <u>Anderson on Wisconsin Insurance Law</u> § 7.27 at 29 (7th ed. 2015)).[4]

¶71 The majority's hypothetical solution to an unfair denial of the duty to defend fails to take into account the realities of litigation. An assumption that a plaintiff will seek insurance coverage does not apply in every case, such as when a plaintiff wishes to apply pressure to a defendant who has the capacity to satisfy a judgment without insurance. Even if a plaintiff is inclined to amend the complaint, a defendant whose insurer has unilaterally denied the duty to defend will have to provide for the costs of its own defense until some unknown date when the plaintiff may amend the complaint. Not every insured can bear the costs of its own defense during prolonged litigation and may be forced to settle a meritless claim out of necessity.

¶72 In this case, the majority's repeated refrain that the four-corners rule benefits the insured rings hollow. <u>See</u> majority op., ¶3 ("we reject Water Well's request to craft a limited exception to the four-corners rule, which has long endured to the benefit of Wisconsin insureds"); <u>see also</u> majority op., ¶25 ("We have applied the four-corners rule,

_____

[4] The assumption that a plaintiff will amend a complaint to trigger insurance coverage for a defendant after new facts arise in discovery is undermined by <u>Atlantic Mut. Ins. Co. v. Badger Medical Supply Co.</u>, 191 Wis. 2d 229, 241, 528 N.W.2d 486 (1995), in which the defendant arguing in favor of coverage alleged that facts discovered in depositions triggered insurance coverage. However, the <u>Atlantic</u> court determined that no allegations in the amended complaint supported the insured's argument. <u>Id.</u>

without exceptions, in duty to defend cases for so long because it generally favors Wisconsin insureds."); majority op., ¶26 ("The four-corners rule ultimately favors insureds in another way.").

¶73 One has to wonder if the majority's absolutist application of the four-corners rule is as beneficial to insureds as the majority proclaims, then why is the insured losing here?

¶74 Its proffered concerns regarding the consideration of extrinsic facts are equally unpersuasive. According to the majority, recognizing exceptions to the four-corners rule would require insurers to "imagine claims the plaintiff might have made." Majority op., ¶25 n. 15. The majority conjures a scenario in which "this judicially-created burden" would "rewrite the contractual duty to defend to be triggered whenever any claim is made rather than only those claims covered under the actual policy terms." Id.

¶75 The majority's reasoning is misguided because allowing consideration of extrinsic facts in this case would not require Consolidated to imagine any claims other than those the plaintiff has already alleged. As the majority acknowledges, Consolidated does not dispute that there is an initial grant of coverage based on the claims alleged in the complaint. Majority op., ¶35. Instead, Water Well seeks to introduce facts extrinsic to the complaint in order to support its argument that the "Your Product" exclusion, invoked by Consolidated in its unilateral denial of its duty to defend, does not apply.

13

¶76 A rule that would create a presumption in favor of an insured's duty to defend is consistent with an insurer's broad duty to defend. See, e.g., Olson v. Farrar, 2012 WI 3, ¶2, 338 Wis. 2d 215, 809 N.W.2d 1. As this court has repeatedly declared, "[i]f there is any doubt about the duty to defend, it must be resolved in favor of the insured." Elliot v. Donahue, 169 Wis. 2d 310, 321, 485 N.W.2d 403 (1992).

¶77 The majority recites the law regarding an insurer's broad duty to defend, and acknowledges that its decision may circumscribe that duty. See majority op., ¶30 n.17. Given that even the majority recognizes that an insurer's unilateral refusal to defend is disfavored, I fail to understand how a rule that encourages insurers to refuse, rather than provide, a defense is consistent with this court's well-established precedent.[5] Majority op., ¶27 (citing Liebovich v. Minn. Ins. Co., 2008 WI 75, ¶55, 310 Wis. 2d 751, 751 N.W.2d 764).

¶78 At the heart of its analysis, the majority protests the efficacy of the known fact exception and predicts dire consequences if it is adopted. Such protests and predictions are out of step with the national trend and prove unpersuasive. The majority of states that have adopted exceptions have not reported the hypothetical quagmires forewarned by the majority. Indeed, the sky above those states has not fallen.

---

[5] Although the majority sets forth the judicially-preferred approaches to determining coverage, its absolutist approach to the four-corners rule may incentive insurers to unilaterally deny coverage instead.

14

V

¶79 The majority pays lip service to its obligation to liberally construe the allegations contained in the complaint, assume all reasonable inferences from the allegations made in the complaint, and resolve any ambiguity in favor of the insured. Majority op., ¶15 (citing Estate of Sustache, 311 Wis. 2d 548, ¶21). However, it fails to follow this directive in its analysis of the "Your Product" exclusion in Consolidated's policy.

¶80 Consolidated's policy excludes coverage for "'Property damage' to 'your product' arising out of it or any part of it." It defines "Your product" as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by [] you."

¶81 Water Well argues that that the "Your Product" exclusion does not apply because the complaint is ambiguous as to what property was damaged when the well pump fell to the bottom of the well. According to the majority, "[t]he Argonaut complaint contains no allegation that any damage occurred to anything other than Water Well's products." Majority op., ¶36; see also Majority op., ¶37 ("there is absolutely no indication in the complaint that any damage occurred to anything other than the well pump."). Thus, the majority concludes that that "Your Product" exclusion applies and that Consolidated had no duty to defend Water Well.

¶82 Contrary to the majority, I would draw all reasonable inferences in favor of the insured. Although there is no

allegation of damage to any pre-existing product, there is also no allegation that when the pump fell to the bottom of the well the damage was exclusively to Water Well's products. It is just as reasonable to infer that other products were damaged as it is to infer that only Water Well's products were damaged.

¶83 In particular, the complaint alleges that the damaged well pump included a "column of pipes." Based on the allegations in the complaint, it is reasonable to infer that the column of pipes consisted of pipe that was not Water Well's product. For example, the complaint alleges that Water Well "install[ed] at least 1 new fourteen-foot section of pipe." It also alleges that Water Well "rethread[ed] pipe as needed."

¶84 Thus, it is also reasonable to infer that Water Well installed only one new section of pipe and that it only repaired some of the other existing pipe as needed. After resolving all ambiguity in favor of the insured, I conclude that the "Your Product" exclusion does not apply and Consolidated had a duty to defend Water Well.

¶85 Alternatively, if the known facts extrinsic to the complaint are considered, it is undeniable that the "Your Product" exclusion does not apply. In its motion for summary judgment before the circuit court, Water Well introduced uncontested evidence that that the alleged damage to the city well included damage to product that was not Water Well's product. Water Well's operations manager averred in an affidavit that although the pipe column in the well did contain new pipe provided by Water Well, it also contained pre-existing

16

pipe. The affidavit further stated that Water Well reused most of the pre-existing pipe sections and only cut and rethreaded (through the work of a subcontractor) those sections of the pre-existing pipe that needed repairing.

¶86 Considering Water Well's affidavit, it appears that products other than Water Well's, such as the pre-exiting pipe, were damaged when the pump fell to the bottom of the well. These are known facts that are not explicitly included in the allegations in the complaint. However, if we consider these extrinsic facts, the "Your Product" exception does not apply and Consolidated would have a duty to defend Water Well.

VI

¶87 Because I conclude that the "Your Product" exclusion does not apply, I must examine whether the "Your Work" exclusion applies.[6] Consolidated's policy excludes "'Property damage'" to 'your work' arising out of it or any part of it . . ." However, there is an exception to the exclusion. The "Your Work" exclusion does not apply "if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."

¶88 Water Well argues that the "Your Work" exclusion does not apply because the subcontractor exception restores coverage. Although the complaint does not specifically allege that a

---

[6] The majority does not address the "Your Work" exclusion because it determines that the "Your Product" exclusion applies. Majority op., ¶33 (citing Am. Family Mut. Ins. Co. v. Am. Girl, Inc., 2004 WI 2, ¶24, 268 Wis. 2d 16, 673 N.W.2d 65).

17

subcontractor performed the work out of which the damage arose, the allegations in the complaint repeatedly refer to "Water Well, its agents, employees and representatives."

¶89 The term "agent" is very broad and can be understood to include a subcontractor when assuming all reasonable inferences in favor of the insured. See, e.g., Black's Law Dictionary 75 (10th ed. 2014) (defining "agent" as "[s]omeone who is authorized to act for or in place of another; a representative"); see also Restatement (Third) of Agency, § 1.01 (Am. Law Inst. 2006) ("Agency is the fiduciary relationship that arises when one person (a 'principle') manifests asset to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assert or otherwise consents so to act."). Thus, the subcontractor exception to the "Your Work" exclusion ought to apply to reinstate coverage.

¶90 Alternatively, if we consider the known facts extrinsic to the complaint, there is no doubt that the subcontractor exception applies to restore coverage under the "Your Product" exclusion. At summary judgment, Water Well introduced evidence that a subcontractor performed work on the well, including cutting and rethreading pipe and drilling and tapping screw holes. Attached to Water Well's affidavit is an invoice from a subcontractor detailing its work on the well pump.

¶91 Considering Water Well's affidavit, the attached receipt substantiates that a subcontractor performed work on the

18

well pump. Thus, the known facts extrinsic to the complaint demonstrate that the subcontractor exception to the "Your Work" exclusion restores coverage.

### VII

¶92 In sum, I conclude that when the complaint is factually incomplete or ambiguous, Wisconsin should adopt the narrow known fact exception to the four-corners rule as presented by Water Well. To do otherwise unfairly denies an insured the benefit of a defense to which it is entitled.

¶93 I also conclude that neither the "Your Product" exclusion nor the "Your Work" exclusion bars coverage. Accordingly, I respectfully dissent.

¶94 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.