# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:         2021AP1720

† Petition for Review filed

Complete Title of Case:

**FERNANDO MARTINEZ,**

**PLAINTIFF-APPELLANT,**

**MOLINA HEALTHCARE,**

**INVOLUNTARY-PLAINTIFF,**

**V.**

**MICHAEL RULLMAN D/B/A RULLMAN CONSTRUCTION, ACUITY , A MUTUAL INSURANCE COMPANY, MICHAEL TODD GROUP, LLC, WILLIAM RULLMAN AND ESTATE OF MICHAEL TODD RULLMAN,**

**DEFENDANTS-RESPONDENTS,†**

**LTJ CONSTRUCTION, INC. AND PEKIN INSURANCE COMPANY,**

**DEFENDANTS,**

**RICHARD STANKE D/B/A RSS CONSTRUCTION, INC. AND GRANGE MUTUAL CASUALTY COMPANY,**

**DEFENDANTS-THIRD-PARTY PLAINTIFFS-CO-APPELLANTS,**

**V.**

**AM PAINTING, INC.,**

**THIRD-PARTY DEFENDANT.**

| | |
|---|---|
| Opinion Filed: | May 10, 2023 |
| Submitted on Briefs: | September 15, 2022 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Gundrum, P.J., Grogan and Lazar, JJ. |
|     Concurred: | |
|     Dissented: | |

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Gregory W. La Cost* and *Ronald F. Wittmeyer, Jr.* of *R.F. Wittmeyer, Ltd.*, Arlington Heights, Illinois. |
| Co-Appellant<br>ATTORNEYS: | On behalf of the defendants-third-party plaintiffs-co-appellants, the cause was submitted on the briefs of *Michael A. Snider* and *Jillian L. Lukens* of *McCoy Leavitt Laskey LLC*, Waukesha. |
| Respondent<br>ATTORNEYS: | On behalf of the defendants-respondents, the cause was submitted on the brief of *Lance S. Grady* and *Heidi M. Miller* of *Grady, Hayes & Neary, LLC*, Waukesha. |
| Non party<br>ATTORNEYS: | A nonparty brief was filed by *Edward E. Robinson* of *Cannon and Dunphy, S.C.*, Brookfield, for the *Wisconsin Association for Justice*. |

COURT OF APPEALS
DECISION
DATED AND FILED

May 10, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1720**

Cir. Ct. No. **2018CV961**

STATE OF WISCONSIN

IN COURT OF APPEALS

---

FERNANDO MARTINEZ,

   PLAINTIFF-APPELLANT,

MOLINA HEALTHCARE,

   INVOLUNTARY-PLAINTIFF,

   V.

MICHAEL RULLMAN D/B/A RULLMAN CONSTRUCTION, ACUITY, A MUTUAL INSURANCE COMPANY, MICHAEL TODD GROUP, LLC, WILLIAM RULLMAN AND ESTATE OF MICHAEL TODD RULLMAN,

   DEFENDANTS-RESPONDENTS,

LTJ CONSTRUCTION, INC. AND PEKIN INSURANCE COMPANY,

   DEFENDANTS,

RICHARD STANKE D/B/A RSS CONSTRUCTION, INC. AND GRANGE MUTUAL CASUALTY COMPANY,

   DEFENDANTS-THIRD-PARTY PLAINTIFFS-CO-APPELLANTS,

   V.

**AM PAINTING, INC.,**

    **THIRD-PARTY DEFENDANT.**

---

APPEAL from a judgment of the circuit court for Kenosha County: CHAD G. KERKMAN, Judge. *Affirmed in part; reversed in part and cause remanded with directions*.

Before Gundrum, P.J., Grogan and Lazar, JJ.

¶1 GROGAN, J. Fernando Martinez appeals from the circuit court judgment granting summary judgment to a group of defendants—the Michael Todd Group, LLC; the Estate of Michael Todd Rullman; William Rullman; and Acuity, a Mutual Insurance Company (with the exception of William Rullman, we refer to this group collectively as "the General Contractor" unless otherwise noted)—that was in charge of the construction project where Fernando sustained serious injuries after falling down an open elevator shaft while working for the painting subcontractor, AM Painting, Inc.[1] Richard Stanke d/b/a RSS Construction, Inc. (collectively "Stanke" unless otherwise noted), a carpentry subcontractor, and his

---

[1] The circuit court's judgment referred to the Michael Todd Group, LLC (the general contractor); the Estate of Michael Todd Rullman (substituted in for Michael Rullman d/b/a Rullman Construction, the owner and operator of Michael Todd Group, LLC after Michael died during the pendency of this lawsuit; William Rullman (Michael's brother and an employee of the general contractor); and Acuity Insurance (the general contractor's insurer) as the "MTG defendants." As previously noted, we refer to this group, excluding William Rullman, as "the General Contractor" unless necessary to refer to the parties individually. William Rullman was an employee of the General Contractor, and we will refer to him individually as either William Rullman or William throughout.

insurer, Grange Mutual Insurance Company, also appeal from the judgment dismissing the General Contractor.

¶2      Fernando[2] raises three arguments on appeal: (1) the circuit court erred in granting summary judgment because there are genuine issues of material fact with respect to his claims against the General Contractor for negligence and a violation of the safe place statute, WIS. STAT. § 101.11 (2021-22);[3] (2) William Rullman should remain in the case even if we affirm the dismissal of the General Contractor because he is not entitled to the defenses available to his employer; and (3) there is no merit to Acuity's claim that it was not timely served with the operative Complaint.  The General Contractor responds that the circuit court's decision was correct because the independent contractor rule applies, relieving it of any liability from the negligence claim; the absence of an unsafe condition relieves it of any liability under the safe place statute; and Acuity was not properly served as required by statute.

¶3      Stanke argues that the circuit court erred in granting judgment to the General Contractor on the safe place claim because the General Contractor had a duty under the safe place statute, and therefore there are genuine issues of fact in dispute from which a jury could find the General Contractor violated the safe place statute.  Stanke also argues that the General Contractor entered into a contractual

---

[2]  We refer to Fernando Martinez as Fernando throughout.

[3]  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

agreement requiring it to maintain safety for all workers/subcontractors and that this agreement prevents it from delegating that duty to the subcontractors.[4]

¶4     We hold that the circuit court erred in granting summary judgment to the General Contractor.  First, as to the negligence claim, the independent contractor rule—"that a principal employer is not liable to others for the torts of independent contractors"[5]—does not apply under the circumstances in this case because the General Contractor contracted to take on all responsibility for worker and subcontractor safety related to the open elevator shaft.  Second, the circuit court erred when it found there was no basis for Fernando to present a safe place claim to the jury.  The disputed material facts in the Record demonstrate that the circuit court erred both in concluding as a matter of law that there was no unsafe condition and that the General Contractor's duty under the safe place statute ended because it installed boards across the shaft opening six months before the accident.  Third, we hold that William Rullman was properly dismissed and affirm that part of the judgment.  Finally, because the circuit court failed to properly address Acuity's argument regarding whether it was served with the operative Complaint, we decline to address the merits of Acuity's jurisdiction claim on appeal and instead remand that issue to the circuit court.[6]

---

[4] The Wisconsin Association for Justice filed an amicus curiae brief asserting similar arguments—namely, that the independent contractor rule does not apply under the circumstances present here because the General Contractor assumed a contractual duty of care and that the circuit court erred in dismissing Fernando's safe place claims.

[5] *See **Wagner v. Continental Cas. Co.**,* 143 Wis. 2d 379, 388, 421 N.W.2d 835 (1988).

[6] We do note, however, that any decision on whether the circuit court has jurisdiction over Acuity has no effect on Acuity's contractual duties to its insured, both with respect to its duty to defend and its duty to indemnify if the jury finds the General Contractor liable.

¶5      Because we reverse the circuit court's grant of summary judgment and remand for proceedings against the General Contractor, it is not necessary for us to address Stanke's arguments. *See Water Well Sols. Serv. Grp., Inc. v. Consolidated Ins. Co.*, 2016 WI 54, ¶33 n.18, 369 Wis. 2d 607, 881 N.W.2d 285 (cases should be decided on the narrowest possible grounds).[7]  Accordingly, we affirm the summary judgment in part, reverse the judgment in part, and remand for further proceedings consistent with this opinion.  Based on our reversal, we further hold that Stanke is free to pursue his cross-claim against the General Contractor on remand.

## I.  BACKGROUND

¶6      The circumstances of this case arise from a multi-year, $1.7 million residential remodeling project of Scott Dillion's home—a two-story home with a basement.  Dillion hired the General Contractor on a handshake—there was no written contract between these parties—to renovate his home, and as a part of that project he wanted an elevator installed that would run between the basement, first floor, and second floor.  As a part of the remodeling project, the General Contractor hired subcontractor AM Painting.  Angel Macedo, who owned AM Painting, is appellant Fernando Martinez's uncle.  Fernando's father, Eduardo Martinez,[8] had

---

[7] The General Contractor contends that Stanke forfeited his rights to challenge his dismissal from the lawsuit because Stanke did not make these arguments at the summary judgment hearing and waited to make them in his motion for reconsideration (and then only with respect to the safe place claim).  Stanke asserts this is not true—that he argued at the summary judgment hearing that the General Contractor, rather than he, owed a duty to Fernando.  Moreover, Stanke argues that the circuit court inconsistently applied the law, which caused him to raise the issue in his motion for reconsideration.  Forfeiture is a rule of judicial administration that a court is not bound to apply.  *See State v. Counihan*, 2020 WI 12, ¶¶25-27, 390 Wis. 2d 172, 938 N.W.2d 530 (reciting the reasons for the forfeiture rule).  Under these circumstances, we decline to apply forfeiture.  Based on our disposition, however, it is not necessary for us to specifically address Stanke's arguments except to note that Stanke may pursue his cross-claim against the General Contractor upon remand.

[8] We will refer to Eduardo Martinez as Eduardo.

worked as a painter with the company for a decade. AM Painting occasionally hired Fernando, and in July 2017 he began working with AM Painting on the Dillion project. Fernando reported to and took assignments from Eduardo.

¶7    On July 14, 2017, at about 10:30 a.m., AM Painting was working on the second floor of the Dillion home. The second-floor work area consisted of a hallway containing three doors, two of which led to bedrooms and one of which led to the elevator shaft that did not yet have an elevator installed. The elevator door opened into the hallway. Eduardo instructed Fernando to vacuum anything on the second floor that had been sanded. Fernando began vacuuming the outside of the elevator door and intended to open it to vacuum the other side. Although Fernando does not remember opening the door, and no one else was in the hallway to see what happened, Fernando fell down the elevator shaft from the second floor to the basement. He suffered serious injuries requiring cranial and spinal surgeries.

¶8    It is Fernando's fall down the elevator shaft that forms the basis for this case. Fernando filed a personal injury lawsuit against the General Contractor, homeowner Dillion, carpentry subcontractor LTJ Construction, Inc. (LTJ), and Stanke, a carpenter LTJ hired[9] to install the second-floor elevator-access door.[10] Fernando asserted two causes of action as to each defendant group—one based on negligence and the other based on a violation of the safe place statute. All

---

[9] To the extent there may remain a question as to whether LTJ hired Stanke, that issue is not relevant to this appeal.

[10] It took multiple filings and discovery at the circuit court level to narrow the defendants to these four groups, which also include various insurers. It is unnecessary for our purposes to detail these additional circuit court proceedings. The Second Amended Complaint is the operative one at issue here.

of these defendants filed motions for summary judgment. The circuit court granted summary judgment to Dillion[11] and the General Contractor. The circuit court ruled that the independent contractor rule applied and, as a result, the General Contractor could not be held responsible. The circuit court further ruled that there was no unsafe condition involved, and therefore Fernando could not maintain a safe place claim against the General Contractor. It also "found" that Acuity was not served within ninety days.

¶9      The court denied Stanke's and LTJ's summary judgment motions, and those defendants remain in the circuit court case. As noted, Fernando asserts the circuit court erred in granting the General Contractor's summary judgment motion and that the Record establishes genuine disputed issues of material fact for trial.

¶10     The Record, as material to our review, demonstrates the following. The General Contractor needed to construct an elevator shaft so there would be space to install an elevator that would travel from the basement to the second floor of the home. In January 2017, William Rullman, an employee of the General Contractor, cut through the floors to frame the elevator shaft and created an opening in the second-floor hallway to provide a second-floor access door to the elevator. After the door opening and shaft were in place, William barricaded the opening with three two-by-four wood boards placed horizontally across the outside of the second-floor access point in what he asserted during his deposition complied with OSHA[12] construction standards. The drywall and electrical contractors confirmed the

---

[11]  Because Fernando does not appeal the judgment granting summary judgment to Dillion, we do not discuss the circuit court's reasons it dismissed Dillion.

[12]  OSHA stands for Occupational Safety and Health Administration.

presence of these guardrails when they performed their work a few months prior to the accident.

¶11     Stanke was hired to install the door over the second-floor elevator opening. When Stanke arrived to complete the work in early July 2017, he saw a single two-by-four guardrail over the opening. He removed the board because he could not install the door with this guardrail in place. After installing the door that would be used to access the elevator, Stanke fastened a wood block—approximately five inches by two inches—as a horizontal "latch" to hold the door closed using a three-inch star screw. Stanke believed this "latch" sufficiently secured the door because the door could not be easily opened with the wood block in place—in order to open the elevator door, the wood block would need to be turned to a vertical position, which he said "would take a lot of effort" because a star screw is difficult to remove. Stanke did not reinstall the original two-by-four guardrail that he had removed because its condition would not permit reusing it and he did not see any other boards nearby. No one told Stanke that he needed to install OSHA-compliant guardrails before or after installing the door, and he did not come prepared to do so.

¶12     Later the same month—July 2017—Fernando fell down the elevator shaft while performing work on the Dillion construction project. After Fernando's fall, Macedo, the owner of AM Painting, heard Michael Rullman scolding William Rullman for not having guardrails up over the second-floor elevator shaft opening. According to William, after Fernando's accident, Michael instructed him to install guardrails, and he thereafter installed several two-by-four boards horizontally across the opening that would prevent someone who opened the elevator door from falling down the shaft. The installed door could be opened and closed with these newly-installed guardrails in place.

¶13 William also testified at his deposition that he had previously posted a handwritten warning sign on the second-floor elevator door and that he saw it on the door one or two days before the incident. He also said there was a two-by-four horizontal board across the door with the warning sign. Others testified that there were no warning signs or two-by-four boards across the door on the date of the accident.

¶14 Dillion gave deposition testimony that when he arrived at the home on the date of the accident, he saw the wood block latch still in place horizontally across the second-floor elevator door. Dillion testified that he heard Michael Rullman tell the painters not to open the door or touch the wood block latch. Dillion said that after the accident, he went to check the second-floor elevator door and found it closed, but with the wood block latch in the vertical position. Dillion opened the door and saw no guardrails in place.

¶15 The Record also contains a contract dated January 2017 between the Michael Todd Group[13] and Access Elevator, the company that would provide the elevator. In the contract with Access Elevator, which appears to be the *only* written contract the General Contractor entered into with any of the subcontractors (or Dillion),[14] the General Contractor agreed to be *solely* responsible for the safety of all workers and subcontractors related to the elevator shaft until the elevator itself had been installed. The contract stated:

> Barricades and/or any/all other legal methods required by
> any jurisdiction to prevent access into shaft shall be required

---

[13] The contract refers to "Michael Rullman" and "Michaeltoddhomes" in the "contact" and "project" areas. There is no dispute that this is Michael Todd Group, LLC, the general contractor for the Dillion project.

[14] The parties do not dispute that this project occurred without any written contracts, except for the contract between Michael Todd Group, LLC and Access Elevator.

> outside each floor landing for the protection of workmen and all other subcontractors and/or occupants until the elevator is installed completely and turned over to home owner. These devices shall be the sole responsibility of GC.

¶16 Fernando submitted an expert report in opposing the summary judgment motions. The expert opined:

> The open elevator shaft into which Fernando Martinez fell was an unreasonably dangerous structural defect, under customary construction safety practices....
>
> Custom and practice in safeguarding construction sites prohibited the creation of uncovered holes in floors and unguarded openings in walls. Customary construction safety rules and practices applicable to renovation of single-family homes in Wisconsin, were clearly defined in the regulations, standards and guidelines attached hereto as Exhibit 2. Safety rules published by NAHB, AGC, ASSE, and OSHA regulations that govern construction in the private sector in Wisconsin, represent custom and practice as it pertained to covering floor holes and guarding openings in walls. These standards and regulations were consistent in defining a guardrail system as a minimum requirement for safeguarding subject elevator shaft at the doorway through which Fernando Martinez fell. If a customary guardrail system had been in place, Fernando Martinez would not have been injured.

¶17 The circuit court did not see any of these facts as determinative. It concluded that the independent contractor rule, discussed by our supreme court in *Wagner v. Continental Casualty Co.*, 143 Wis. 2d 379, 400-01, 421 N.W.2d 835 (1988),[15] relieved the General Contractor of any liability for Fernando's negligence claim because Fernando's injury arose while he was working for an independent subcontractor. Further, the circuit court concluded that the General Contractor was entitled to summary judgment on the grounds that the elevator shaft did not constitute an unsafe condition under the safe place statute, determining that the

---

[15] The circuit court did not specifically reference this case in its rather cursory summary judgment ruling.

General Contractor's initial installation of the guardrails relieved it of any statutory duty to keep the construction site as safe as the circumstances reasonably permit. It also "found" that Acuity was not properly served. We address each conclusion in turn.

## II. STANDARD OF REVIEW

¶18 This case comes before us on review of a grant of summary judgment. "'Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.'" *Talley v. Mustafa*, 2018 WI 47, ¶12, 381 Wis. 2d 393, 911 N.W.2d 55 (quoting *Water Well Sols. Serv. Grp., Inc.*, 369 Wis. 2d 607, ¶11). Appellate courts review a grant of summary judgment de novo using the same methodology as the circuit court. *Talley*, 381 Wis. 2d 393, ¶12. Summary judgment should be granted only when there are no genuine issues of disputed material facts. *Romero v. West Bend Mut. Ins. Co.*, 2016 WI App 59, ¶17, 371 Wis. 2d 478, 885 N.W.2d 591. There are some rare circumstances where, even though there is a disputed material fact, summary judgment will not be precluded. *Byrne v. Bercker,* 176 Wis. 2d 1037, 1045, 501 N.W.2d 402 (1993). Disputed material facts may "become irrelevant if, in giving full benefit to the party against whom summary judgment is sought, the claim nevertheless is barred as a matter of law." *Id.*

## III. DISCUSSION

¶19 We address each of the dispositive legal arguments in turn. First, we conclude the circuit court erred in granting summary judgment based on the independent contractor rule because the General Contractor assumed the duty to safeguard the workers and all subcontractors with respect to the elevator shaft. Under these circumstances, the independent contractor rule does not apply. *See*

*Presser v. Siesel Constr. Co.*, 19 Wis. 2d 54, 59, 119 N.W.2d 405 (1963) (general contractor may "by contract … assume a duty of care" it otherwise would not have). Without the benefit of the independent contractor rule, the General Contractor cannot be dismissed from this case because the Record contains genuine issues of disputed material fact as to whether the General Contractor acted negligently in protecting Fernando while he worked near the elevator shaft.

¶20    Second, we conclude the circuit court erred in concluding as a matter of law that there was no unsafe condition based on its conclusion that the initial installation of the guardrails relieved the General Contractor of any safe place statutory duty.  There were disputed issues of material fact with respect to the General Contractor's statutory duty to keep this workplace as safe as reasonably possible as required by the safe place statute.

¶21    Third, William Rullman, who did not assume a safeguarding duty by contract, is an employee of the General Contractor and, at all pertinent times, was acting within the scope of his employment.  William was not a party to the Access Elevator contract to keep all workers/subcontractors safe around the elevator shaft, and any negligence on his part would be imputed to the General Contractor. Therefore, we conclude the circuit court did not err in granting summary judgment to William.

¶22    Fourth, based on the summary judgment hearing transcript, it is not apparent that the circuit court actually applied the summary judgment methodology as required when it granted summary judgment in favor of Acuity.  For the reasons explained below, we therefore remand that issue to the circuit court so that it may properly consider that issue in accordance with our summary judgment

methodology. Accordingly, we affirm the judgment in part, reverse the judgment in part, and remand for further proceedings consistent with this opinion.[16]

### A. Independent Contractor Rule

¶23 In *Wagner*, our supreme court held that "an employee of an independent contractor is precluded from receiving worker's compensation benefits from the independent contractor and also maintaining a tort action against the person who employs the independent contractor, the principal employer or general contractor, unless the principal employer is affirmatively negligent with respect to the employee." *Id.*, 143 Wis. 2d at 381-82. We refer to this as the independent contractor rule. This rule stems from the fact that a subcontractor's employee injured on the job receives worker's compensation from his direct employer and should not also be able to recover payment from the general contractor in tort. *See id.* at 385. *Wagner* concluded that a subcontractor's employee injured on the job may sue a general contractor for negligence only under very specific circumstances, including when the injuries are "caused by the [general contractor's] *affirmative* act of negligence." *Id.* at 388 (emphasis added).

¶24 Fernando asserts that the independent contractor rule does not apply here either because the General Contractor's acts constitute affirmative acts of negligence or because the General Contractor assumed responsibility to safeguard the elevator shaft in the contract it executed with Access Elevator. We are not convinced that any of the General Contractor's acts satisfy the definition of an

---

[16] As noted, we decline to address the arguments Stanke raised on appeal because our decision reversing the grant of summary judgment in favor of the General Contractor allows Stanke to continue his cross-claim against the General Contractor upon remand.

affirmative, negligent act. However, we do agree that the existence of the Access Elevator contract prohibits the application of the independent contractor rule.

¶25 An affirmative act of negligence requires "'active misconduct' that increases the risk of harm to the employee." ***Danks v. Stock Bldg. Supply, Inc.***, 2007 WI App 8, ¶25, 298 Wis. 2d 348, 727 N.W.2d 846. Fernando contends there are several affirmative, negligent acts by the General Contractor, such as constructing the elevator shaft, creating the second-floor opening, not managing the open shaft, failing to properly sequence the construction work, failing to promptly install the elevator, and failing to secure adequate lighting by the elevator shaft. We are not convinced.

¶26 Although constructing the elevator shaft and creating the second-floor opening certainly are affirmative acts, neither of these are "misconduct" that caused Fernando's injuries. These acts occurred in early 2017, after which William properly installed the guardrails. Fernando's injuries occurred in mid-July 2017, several months later. The other enumerated acts—failure to manage the open shaft, failure to inspect to ensure the guardrails remained in place, failure to sequence the contractors, failure to promptly install the elevator, and failure to provide adequate lighting—are all acts of *omission*, not commission. *See* ***Estate of Thompson v. Jump River Elec. Coop.***, 225 Wis. 2d 588, 601, 593 N.W.2d 901 (Ct. App. 1999) (acts of negligent omission involve "'inaction or a failure to take steps to protect'" (citation omitted)). Thus, the circuit court correctly concluded there were no affirmative acts of negligence.

¶27 We agree with Fernando, however, that under ***Presser***, the existence of the contract wherein the General Contractor assumed sole responsibility to

14

protect the workers and all subcontractors makes the independent contractor rule inapplicable. In *Presser*, the supreme court recognized that:

> [T]he negligent performance or nonperformance of a duty created by a contract may constitute actionable negligence…. It imposes the standard of care and the obligation to the plaintiff. A general contractor by contract may assume a duty of care for the benefit of others than the promisee over and above such common law liability for negligence which would otherwise be applicable to the facts.

*Id.*, 19 Wis. 2d at 59. *Presser* controls here because the contract the General Contractor entered into with Access Elevator, like the contract in *Presser*, imposed a duty "above such common law liability for negligence" with respect to safeguarding the open elevator shaft. *See id.* Thus, Fernando's negligence claim against the General Contractor that would otherwise be barred by the independent contractor rule may proceed based on the safety contract.

¶28    The Record is replete with genuine issues of material fact over whether the General Contractor breached the contractual duty it assumed. Multiple witnesses provided deposition testimony about the absence of guardrails or OSHA-compliant barricades to prevent workers or subcontractors from falling down the elevator shaft. Some witnesses saw a warning sign on the door, whereas others did not. This dispute over whether the General Contractor complied with the duty to maintain safety that it assumed by contract precludes summary judgment. Thus, the circuit court erred in granting summary judgment to the General Contractor on the negligence claim, and we reverse that part of the judgment.

### B. Safe Place Statute

¶29    Fernando next asks us to reverse the circuit court's grant of summary judgment with respect to his safe place claim. He contends the circuit court erred

in concluding that, as a matter of law, the elevator shaft was not an unsafe condition under WIS. STAT. § 101.11 and in concluding that, when the General Contractor installed boards across the second-floor door opening in early 2017, it satisfied its duty under the safe place statute. We conclude the circuit court erred in both respects.

¶30 "Wisconsin's safe place statute, WIS. STAT. § 101.11, is a negligence statute that imposes a heightened duty on employers and owners of places of employment and public buildings to construct, repair, or maintain buildings safely." *Mair v. Trollhaugen Ski Resort*, 2006 WI 61, ¶19, 291 Wis. 2d 132, 715 N.W.2d 598. Section 101.11(1), as relevant, provides:

> Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall be safe for employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters.

It is undisputed that the safe place statute applies to the construction project because the General Contractor was an employer at a place of employment (albeit temporary), *see Barth v. Downey Co., Inc.*, 71 Wis. 2d 775, 778, 239 N.W.2d 92 (1976), and owed a duty to keep the place "'in as safe a condition as the nature of the premises reasonably permits.'" *See Hofflander v. St. Catherine's Hosp., Inc.*, 2003 WI 77, ¶87, 262 Wis. 2d 539, 664 N.W.2d 545 (citation omitted). Our law recognizes Fernando as a "frequenter" within the meaning of the safe place statute. *See Hortman v. Becker Constr. Co., Inc.*, 92 Wis. 2d 210, 226, 284 N.W.2d 621 (1979) ("An employee of an independent contractor doing work on the premises is a frequenter working in a place of employment.").

¶31   The meaning of "safe" in WIS. STAT. § 101.11 "does not mean completely free of any hazards" and does not mean that "[j]ust because a place could be made more safe" that the employer breached its duty. *Megal v. Green Bay Area Visitor & Convention Bureau, Inc.*, 2004 WI 98, ¶10, 274 Wis. 2d 162, 682 N.W.2d 857.   Rather, the statute imposes a duty on an employer "to construct, to repair, and to maintain a safe place of employment[.]" *Barry v. Employers Mut. Cas. Co.*, 2001 WI 101, ¶20, 245 Wis. 2d 560, 630 N.W.2d 517.   An unsafe condition arises under the safe place statute when the employer fails "to keep an originally safe structure in proper repair or properly maintained." *Id.*, ¶27.   Stated otherwise, the unsafe condition occurs when an employer fails "to repair or maintain the property and generally involve[s] the structure falling into disrepair or not being maintained in a safe manner." *Mair*, 291 Wis. 2d 132, ¶23.   As material here, the unsafe condition associated with the structure involves the open elevator shaft.

¶32   There does not appear to be any question that the elevator shaft itself was properly constructed—it was not a structural defect under the safe place statute—and it appears that William Rullman's initial installation of the guardrails prevented an unsafe condition.   The circuit court therefore determined that the open elevator shaft was not an unsafe condition because William initially installed the purportedly OSHA-compliant guardrails over the opening.   But the safe place statute requirements extend beyond initial construction, and the General Contractor, as the employer, therefore owed a duty to Fernando (a frequenter) to *maintain* the open elevator shaft *in a safe manner*.   *See id.*   The Record is replete with disputed issues of material fact as to whether the elevator shaft awaiting installation of the elevator and concealed by a door similar to the bedroom doors on that floor was *maintained in a safe manner*.

¶33    Fernando's expert said that it was not.  The expert opined that if the General Contractor had maintained guardrails over the open elevator shaft throughout the duration of the project, the unsafe condition would not have arisen. A number of witnesses also provided deposition testimony about the presence and absence of the guardrails.  And there is a dispute over whether the wood block latch that Stanke installed constituted "maintaining" the open elevator shaft in a safe manner.  Whether the General Contractor breached its duty to maintain the open elevator shaft to prevent it from being an unsafe condition is therefore a question of fact for the jury.[17]

### C.  William Rullman

¶34    The circuit court dismissed William Rullman from the lawsuit as a part of the General Contractor defendant group.  Fernando asks us to reverse the circuit court's decision in this regard because he sued William individually.  As noted, we affirm the circuit court's dismissal of William from the lawsuit.  William

---

[17] The General Contractor insists it had no control over AM Painting.  Fernando argues that lack of control over *AM Painting* is not dispositive to relieve the General Contractor of liability because the safety contract evidences the General Contractor retained control over safeguarding the elevator shaft with respect to all the workers on the premises.  Accordingly, we cannot say, as a matter of law, that the General Contractor relinquished the control over the premises necessary to relieve it of its duty under the safe place statute.

Moreover, although the General Contractor asserts that *Hofflander v. St. Catherine's Hospital, Inc.*, 2003 WI 77, 262 Wis. 2d 539, 664 N.W.2d 545, precludes application of the safe place statute, we conclude *Hofflander* is distinguishable and does not control.  The General Contractor argues that Fernando's injury in this case, like that of the plaintiff in *Hofflander*, was the result of an "'act[] of operation,'" *i.e.*, Fernando opening the elevator door or AM Painting removing the wood block latch and therefore creating an unsafe condition, as opposed to an already existing unsafe condition.  *See id.*, ¶94.  In making this argument, however, the General Contractor assumes there was no existing unsafe condition at all because, according to it, there was at least *some* type of "barricade"—the "latch" Stanke constructed.  Whether there was in fact some type of barricade in place at the time of Fernando's injury—and one that sufficiently complied with applicable safety standards and WIS. STAT. § 101.11(1)—is a question that remains unresolved.  Accordingly, this is not an "'act[] of operation'" situation like that in *Hofflander*.

did not guarantee the safety of the workers or subcontractors as he was not a party to the contract with Access Elevator. Further, William is an employee of the General Contractor, and the General Contractor will be responsible for William's negligence, if any, through the doctrine of respondeat superior. *See, e.g.*, ***Lewis v. Physicians Ins. Co. of Wis.***, 2001 WI 60, ¶12, 243 Wis. 2d 648, 627 N.W.2d 484 (The doctrine of respondeat superior "allows a non-negligent employer to be held liable for an employee's actions.").

### D. Acuity

¶35    In its summary judgment motion, Acuity asserted that the circuit court lacked jurisdiction over it because Fernando purportedly failed to timely serve the Second Amended Complaint upon it as required by WIS. STAT. § 801.02(1) and that this purported noncompliance was a fundamental defect. Acuity raises the same argument on appeal. In response, Fernando argues, as he did at the summary judgment stage, that Acuity waived its ability to assert that service was improper pursuant to WIS. STAT. § 802.02(6).

¶36    In addressing this argument, the circuit court said only: "So I'm granting the motion for summary judgment filed on February 12th with respect to defendants Michael Todd Group, the Estate of Michael Todd Rullman, William Rullman and Acuity, a Mutual Insurance Company. *Also [I] find that Acuity was not served within 90 days*." (Emphasis added.) The circuit court did not cite to any law—statutory or otherwise—or provide any explanation or rationale for "finding" that Fernando did not properly serve Acuity. Further, it did not discuss Fernando's argument that Acuity waived its service argument. These arguments, taken as a whole, suggest that there are disputed issues of material fact that would preclude summary judgment as to this issue. The circuit court, however, failed to adequately

address[18] these arguments or state whether there were any disputed issues of material fact.

¶37 Because we reverse the circuit court with respect to its grant of summary judgment, we also remand this issue back to the circuit court so that it can fully address and properly assess the parties' dispute as to whether Acuity was properly served and whether Acuity waived its right to assert a jurisdictional defense.

## IV. CONCLUSION

¶38 The independent contractor rule does not apply under the circumstances here because the General Contractor contracted to assume sole responsibility for worker and subcontractor safety with regard to the elevator shaft when it entered the contract with Access Elevator. As a result, the circuit court erred in granting summary judgment to the General Contractor with respect to Fernando's negligence claim. The Record contains genuine disputed issues of material fact as to whether the General Contractor's negligence caused Fernando's injuries; therefore, we reverse that part of the judgment. The circuit court also erred in granting summary judgment to the General Contractor on the safe place claim because there are disputed issues of material fact with respect to the General Contractor's statutory duty to keep this workplace as safe as reasonably possible as required by the safe place statute. Whether the General Contractor breached its duty

---

[18] The circuit court's single sentence "finding" that Fernando did not properly serve Acuity with the Second Amended Complaint appears almost as an afterthought because it was granting summary judgment to Acuity's insured, which perhaps led it to believe there was no need to further address the jurisdiction argument itself as a result.

to safely maintain the open elevator shaft to prevent it from being an unsafe condition is therefore a question of fact for the jury.

¶39    The circuit court did not err when it granted summary judgment to William Rullman because William was not a party to the Access Elevator contract and was at all times acting within the scope of his employment as an employee for the General Contractor, and therefore, if the jury finds William negligent, the General Contractor will be held liable.  Finally, because the circuit court failed to properly address Acuity's jurisdictional argument, we remand that issue to the circuit court with directions to do so.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.