COURT OF APPEALS
DECISION
DATED AND FILED

February 19, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1210**

STATE OF WISCONSIN

Cir. Ct. No. 2022JV111

IN COURT OF APPEALS
DISTRICT II

IN THE INTEREST OF K.R.W., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

    PETITIONER-RESPONDENT,

  V.

K.R.W.,

    RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Sheboygan County: KENT R. HOFFMANN, Judge. *Reversed and cause remanded.*

¶1    GROGAN, J.[1]  K.R.W. appeals from a dispositional order finding him delinquent of one count of substantial battery, contrary to WIS. STAT. § 940.19(2).  He argues that the circuit court erred in denying his motion to suppress statements he made to a juvenile intake worker while he was in police custody after being arrested for punching another juvenile.  According to K.R.W., because WIS. STAT. § 938.20(7)(a) requires that an intake worker interviewing "a juvenile who is possibly involved in a delinquent act" inform the juvenile of certain rights that are also required under *Miranda v. Arizona*, 384 U.S. 436 (1966), the intake worker must fully inform the juvenile of his *Miranda* rights. K.R.W. believes that the statements he made to the intake worker here should have been suppressed because the intake worker failed to do so.  Because the intake worker violated § 938.20(7)(a)'s mandatory requirements, this court reverses the order denying suppression, vacates the dispositional order, and remands for further proceedings consistent with this opinion.[2]

## I. BACKGROUND

¶2    In December 2022, the State filed a juvenile delinquency petition charging K.R.W. with one count of substantial battery.  The petition was based on a September 2022 incident between a group of juveniles including K.R.W., the

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] Because a clear statutory violation occurred in this case, this court resolves this matter on the statutory basis rather than on K.R.W.'s more broad *Miranda* argument and therefore does not address the parties' *Miranda*-specific arguments further.  *See Water Well Sols. Serv. Grp., Inc. v. Consolidated Ins. Co.*, 2016 WI 54, ¶33 n.18, 369 Wis. 2d 607, 881 N.W.2d 285 ("We decide cases on the narrowest grounds possible."); *Martinez v. Rullman*, 2023 WI App 30, ¶5, 408 Wis. 2d 503, 992 N.W.2d 853 (this court decides cases on the narrowest possible grounds).

eleven-year-old victim (Mark[3]), a twelve-year-old girl (D.E.), and a few of K.R.W.'s friends. Mark reported that one of the girls—later identified as D.E.—walked up to him, grabbed his shirt, and asked if he had called her the "n word." When Mark said he had not, one of the boys punched Mark in the mouth, after which the group all ran away.

¶3 Police investigation of the incident led them to D.E., who told police that K.R.W. was the one who punched Mark. K.R.W. was arrested at school by his school resource officer (SRO). Before the SRO could read him *Miranda* warnings, K.R.W. told the SRO he wanted a lawyer. When Sheboygan Police Officer Melanie McCarthy came to the school to transport K.R.W. to the police station for booking, the SRO told McCarthy that K.R.W. had asked for a lawyer. As a result, McCarthy did not ask K.R.W. questions about what happened.

¶4 Pursuant to the juvenile code, *see* WIS. STAT. ch. 938, McCarthy called the Sheboygan County Department of Health and Human Services so that a juvenile intake worker could meet with K.R.W. to determine whether K.R.W. would remain in custody or if he could be released. Social Worker Jessica Louisier was the intake worker who came to the police station to interview K.R.W. McCarthy waited outside the room while Louisier questioned K.R.W. Louisier asked K.R.W. questions about the incident; however, prior to doing so, she did not advise K.R.W. of his right to counsel or his right against self-incrimination as required by WIS. STAT. § 938.20(7)(a). K.R.W. initially denied punching the victim and told Louisier that one of the other boys had done so, but he later

---

[3] This is a pseudonym. *See* WIS. STAT. RULE 809.86.

3

admitted that he had punched the victim. Louisier determined that K.R.W. would not need to remain in custody, but could be released to his home.

¶5 K.R.W. entered a denial plea and then filed a motion seeking to suppress the statements he made during the interview with Louisier. Specifically, he argued that his constitutional rights were violated because his confession occurred during a custodial interrogation where he had invoked his right to counsel, had not been provided *Miranda* warnings, and had not waived his rights to have a lawyer present. The circuit court deferred ruling on the suppression motion until the court trial.

¶6 At the trial, the State called all of its witnesses before the circuit court took up the pending suppression motion.[4] The State's first witness was the victim, Mark, who testified about the incident and his injuries. Mark testified he did not know the boy who punched him and could not identify him. Next, the girl involved in the incident, D.E., testified that K.R.W. punched Mark after she had confronted Mark about calling her names during school gym class. The police officer who responded to the scene also testified, and he confirmed that he did not witness the incident but that he observed Mark's injuries after the fact.

¶7 Louisier also testified, and she confirmed that she went to the police station to interview K.R.W. after receiving a call from the police requesting that she make "the custody decision" following K.R.W.'s arrest. She also testified that K.R.W. initially told her that someone else had punched Mark but that he later admitted that he had "punch[ed] the victim." On cross-examination, Louisier

---

[4] The circuit court indicated that if it ultimately granted the suppression motion, it would simply disregard Louisier's testimony about K.R.W.'s statements to her.

testified that she was "not aware" as to whether K.R.W. had been "read his *Miranda* rights" and admitted she had not read him his *Miranda* rights.[5] She further acknowledged that McCarthy was standing outside the room while she was interviewing K.R.W., the door to the room was open, and that during her conversation with K.R.W., she asked McCarthy questions.

¶8      McCarthy, who was standing just outside the room where Louisier was interviewing K.R.W., had her body camera on and recording, per police policy. The body camera recorded—albeit from outside the room—the entire interaction between Louisier and K.R.W. On cross-examination, K.R.W.'s counsel asked Louisier about the body camera video, pointing out that it showed Louisier at times involving McCarthy in her conversation with K.R.W. The body camera video used at trial was admitted into evidence.

¶9      The State called McCarthy as its final witness. McCarthy testified about transporting K.R.W. from his school to the police station, and she indicated she: (1) knew K.R.W. was under arrest and that she did not read K.R.W. his *Miranda* rights; (2) was aware K.R.W. had invoked his right to a lawyer, so she did not question him; (3) only asked questions related to processing him; (4) contacted social services because the social worker makes the "determination

---

[5] Although counsel specifically asked Louisier whether she advised K.R.W. of his *Miranda* rights, those rights include the "right to counsel" and the "right against self-crimination" identified in WIS. STAT. § 938.20(7)(a). *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966) ("Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney[.]"). This court has reviewed the body camera recording admitted into evidence. It does not show Louisier informing K.R.W. of his right to counsel or his right against self-incrimination. *See* § 938.20(7)(a). Moreover, the State, despite acknowledging § 938.20(7)(a)'s requirements, does not point to any evidence that would support a conclusion that Louisier had so advised K.R.W.

on placement" for juveniles; (5) stood outside the room while Louisier was interviewing K.R.W.; and (6) kept her body camera on per police policy. During cross-examination, McCarthy confirmed she could hear some of the conversation between K.R.W. and the social worker and that although she did not "participate[] in the interview," she had "answered any questions [Louisier] had."

¶10     The State rested its case following McCarthy's testimony, and defense counsel indicated he did not intend to call any witnesses prior to the circuit court ruling on K.R.W.'s suppression motion. The court then heard arguments on the suppression motion and thereafter made a number of factual findings, none of which appear to be disputed on appeal. Specifically, the court found that K.R.W. was in custody, that he had invoked his right to counsel, that McCarthy did not ask K.R.W. any "questions about what occurred," that Louisier did not read K.R.W. his rights, and that K.R.W. confessed to Louisier "that he had punched the" victim. The court concluded, however, that "there is no requirement under Wisconsin law" that the juvenile intake worker was to advise K.R.W. of his *Miranda* rights before conducting the interview. Based on this, it denied the suppression motion.[6]

¶11     After the circuit court denied K.R.W.'s suppression motion, K.R.W. decided to testify in his own defense. According to K.R.W., he punched the victim one time and explained that he did so to defend his friend, D.E., because the victim had grabbed D.E.'s shirt, he was afraid the victim "was going to hurt [her]," and he did not think D.E. could protect herself. K.R.W. also testified that

---

[6] The circuit court did suppress K.R.W.'s statement denying he punched the victim because that statement was made in response to McCarthy telling Louisier that the incident was not a "fight" but rather, "it was a single punch[.]"

the victim let go of D.E.'s shirt after he punched him—after which the group then ran away.

¶12    The circuit court found the State had proven the elements of substantial battery beyond a reasonable doubt and rejected K.R.W.'s claim that he acted in D.E.'s defense.  It adjudicated K.R.W. delinquent on the charge, placed him on supervision for one year, and ordered him to perform fifty hours of community service.  K.R.W. appeals.

## II.  DISCUSSION

¶13    The issue in this case is whether the circuit court erred when it denied K.R.W.'s suppression motion.  This court reviews a suppression decision under a two-step analysis.  *State v. Meisenhelder*, 2022 WI App 37, ¶7, 404 Wis. 2d 75, 978 N.W.2d 551.  Findings of fact will be upheld unless they are clearly erroneous.  *Id.*  Whether the circuit court reached the correct legal conclusion is reviewed independently.  *Id.*  Here, the dispositive issue is dependent on the interpretation of a statute, which this court also reviews independently.  *See State v. Brott*, 2023 WI App 45, ¶7, 409 Wis. 2d 96, 996 N.W.2d 78, *review denied*, 2024 WI 12, 6 N.W.3d 875.

¶14    The applicable statute, WIS. STAT. § 938.20(7)(a), provides:  "When a juvenile who is possibly involved in a delinquent act is interviewed by an intake worker, the intake worker *shall* inform the juvenile of his or her right to counsel and the right against self-incrimination."  (Emphasis added.)  When interpreting statutory language, courts apply the well-established methodology articulated in *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110.  "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of

surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46. This court "determine[s] what the statute means so that it may be given its full, proper, and intended effect." *Id.*, ¶44. Courts "'begin[] with the language of the statute[,]'" and if the meaning of the text is plain, we go no further. *Id.*, ¶45 (citation omitted).

¶15    Both the State and K.R.W. acknowledge that there are no cases interpreting WIS. STAT. § 938.20(7)(a), and this court has found none.[7] Nevertheless, the language of this statute is plain. An intake worker interviewing "a juvenile who is possibly involved in a delinquent act" "shall inform" the juvenile of his right to counsel and his right against self-incrimination. *Id.* The qualifying circumstance, therefore, is that there must be an interview occurring with a "juvenile who is possibly involved in a delinquent act," and it is undisputed here that there was an interview with K.R.W., who is a juvenile allegedly involved in a delinquent act given that he was arrested and in custody for the charge of substantial battery. Thus, the qualifying circumstance of § 938.20(7)(a) is satisfied.

¶16    It is also undisputed that Louisier was an "intake worker." Consequently, all that is left of the statutory text is the requirement that the intake worker "shall inform the juvenile of his or her right to counsel and the right against self-incrimination." *See id.* In construing statutes, this court generally "presume[s] that the word 'shall' is mandatory[.]" *Brott*, 409 Wis. 2d 96, ¶19

---

[7] In his brief, K.R.W. requested that this case be converted to a three-judge case. However, the statutes require an appellant to file a *motion* for such a request; therefore, the request in his brief is insufficient under the statute. *See* WIS. STAT. RULE 809.41(1) ("If an appellant desires the matter to be decided by a 3-judge panel, the appellant shall file a motion for a 3-judge panel with the notice of appeal[.]").

(quoted source omitted); ***GMAC Mortg. Corp. v. Gisvold***, 215 Wis. 2d 459, 477, 572 N.W.2d 466 (1998) ("The general rule in interpreting statutory language is that 'the word "shall" is presumed mandatory when it appears in a statute.'" (citation omitted)).  Here, the word "shall" can only be interpreted to be mandatory, as there is nothing in the context of the statute that indicates the dictate is optional.  *See **id.***

¶17    In light of the foregoing, Louisier clearly failed to comply with WIS. STAT. § 938.20(7)(a), which required that she inform K.R.W. that he had the right to counsel and the right against self-incrimination, and a statutory violation therefore occurred.  The only question remaining is whether that violation requires suppression.

¶18    While WIS. STAT. § 938.20(7) does not itself provide for a remedy when a violation of its requirements occurs, in setting forth § 938.20(7)(a)'s requirements, the legislature determined that a juvenile being interviewed by an intake worker must be told that he has, at the very least, *some* of the rights that are also set forth in *Miranda*.  Thus, while the legislature did not incorporate the full panoply of *Miranda* rights in § 938.20(7)(a), the words it chose were similar to the protections *Miranda* provides, and it therefore logically follows that the remedy for this statutory violation should mirror the remedy for a *Miranda* violation. Under *Miranda*, incriminating statements made in violation of its requirements must be suppressed.  *Miranda*, 384 U.S. at 444.  However, if statements were erroneously admitted, courts will not reverse a conviction on that basis if the admission of the statements constituted harmless error.  ***State v. Martin***, 2012 WI 96, ¶44, 343 Wis. 2d 278, 816 N.W.2d 270.

¶19     In determining whether evidence that should have been suppressed is harmless, this court must determine whether "it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *See id.*, ¶45 (quoted source omitted). Stated differently, an "error is harmless if the beneficiary of the error proves 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Id.* (quoted source omitted). The burden of proving the error was harmless is on the party who benefitted from the erroneous admission—here, the State. *See id.*

¶20     Courts consider a number of factors in assessing whether an error was harmless, including: "the frequency of the error; the importance of the erroneously admitted evidence; the presence or absence of evidence corroborating or contradicting the erroneously admitted evidence; whether the erroneously admitted evidence duplicates untainted evidence; the nature of the defense; the nature of the State's case; and the overall strength of the State's case." *Id.*, ¶46.

¶21     There is no question that K.R.W.'s statements to Louisier should have been suppressed given the clear statutory violation. That does not end the inquiry, however, because this court must also determine whether the admission of these statements was harmless.

¶22     Based on the Record, this court cannot conclude that the admission of K.R.W.'s confession to Louisier through Louisier's testimony was harmless. First, K.R.W.'s statements were obviously incriminating, and second, his admission to Louisier that he had punched the victim was the basis for the felony charge of which he was ultimately adjudicated delinquent. Next, the erroneously admitted statements arose multiple times throughout Louisier's testimony—she testified twice during direct examination that K.R.W. admitted to punching the

victim, and the prosecutor referenced this admission again during Louisier's redirect examination. The prosecutor also relied on it during closing argument.

¶23 Perhaps most significantly, Louisier's testimony that K.R.W. said he punched the victim was extremely important—not only was she the strongest witness on this point, she was also the only independent witness and the only adult witness to testify that K.R.W. said he punched the victim. The circuit court, acting as the factfinder, unquestionably relied on Louisier's testimony in finding the State proved the element of K.R.W.'s intent to cause the victim bodily harm.

¶24 As for corroborating or duplicative testimony, D.E.'s testimony corroborates and arguably duplicates Louisier's testimony; however, D.E., who was only thirteen years old, was not an independent witness. Rather, she was directly involved in the incident and arguably provoked it. And while K.R.W.'s own testimony also corroborates and duplicates Louisier's testimony, it cannot be said that he would have testified at all had the erroneously admitted evidence been properly suppressed.[8]

¶25 Finally, without Louisier's testimony, K.R.W. may have placed greater emphasis on challenging D.E.'s credibility, particularly given that she was the only other witness who implicated K.R.W. at trial. Perhaps D.E.'s testimony, standing alone, could have been sufficient for the factfinder to reach the same outcome; however, this court cannot say that it is clear beyond a reasonable doubt

---

[8] The Record reflects that the defense had no witnesses until after the circuit court ruled on the suppression motion and that it was only after the circuit court denied the motion that K.R.W. decided to testify.

that the factfinder *would* have done so. The erroneous admission of Louisier's testimony was therefore not harmless.

### III. CONCLUSION

¶26 This court concludes that the circuit court erred when it denied K.R.W.'s motion to suppress because K.R.W.'s statements to Louisier should have been suppressed due to Louisier's failure to comply with WIS. STAT. § 938.20(7)(a)'s statutory mandate to inform him that he had the right to counsel and the right against self-incrimination. This court also concludes that the admission of K.R.W.'s inculpatory statements through Louisier's testimony was not harmless. Accordingly, this court reverses the denial of the suppression motion, vacates the dispositional order, and remands for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.