COURT OF APPEALS
DECISION
DATED AND FILED

July 30, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.　　**2025AP813-FT**

**STATE OF WISCONSIN**

Cir. Ct. No.　2023GN73

**IN COURT OF APPEALS
DISTRICT II**

IN THE MATTER OF THE GUARDIANSHIP AND PROTECTIVE PLACEMENT OF R.P.L.:


RACINE COUNTY,

　　PETITIONER-RESPONDENT,

　V.

R.P.L.,

　　RESPONDENT-APPELLANT.


　　　　　APPEAL from an order of the circuit court for Racine County: TIMOTHY D. BOYLE, Judge. *Affirmed*.

¶1    GROGAN, J.[1]  Robert[2] appeals from an order continuing his protective placement.  He contends that the County failed to prove by clear and convincing evidence that: (1) his medical conditions satisfied the dangerousness criterion in WIS. STAT. § 55.08(1)(c); and (2) his condition is permanent as required by § 55.08(1)(d).[3]  This court affirms.

## I. BACKGROUND

¶2    In June 2023, Ascension All Saints Hospital filed a petition seeking protective placement for Robert, who was at that time an inpatient at the Hospital "after he was found down at home by Meals on Wheels delivery."  That petition said:

> He has a history of a prior stroke, aphasia, seizure disorder and anxiety disorder.  He suffers from severe confusion, memory loss, poor judgment and poor insight.  He cannot make informed health care or financial decisions.  Due to his cognitive incapacity and care needs, he requires 24-hour supervision and care in a supervised community setting.

The petition also attested that Robert met "the standards for protective placement specified in [WIS. STAT.] § 55.08(1)[.]"  After a due process hearing, the circuit court entered orders for guardianship and protective placement.

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24).  All references to the Wisconsin Statutes are to the 2023-24 version.

[2]  This is a pseudonym.

[3]  Robert also argues that his upcoming annual review hearing does not make this appeal moot.  Because this court decides the merits while the August 9, 2024 order is still in place, it is not necessary to address the mootness issue.  *See State v. Lickes*, 2021 WI 60, ¶33 n.10, 397 Wis. 2d 586, 960 N.W.2d 855 ("Issues that are not dispositive need not be addressed." (quoted source omitted)); *Martinez v. Rullman*, 2023 WI App 30 ¶5, 408 Wis. 2d 503, 992 N.W.2d 853 (this court decides cases on the narrowest possible grounds).

¶3 During his annual review with his guardian in June 2024, Robert reported that he would like "to go back home and that he would like a review in court." His guardian then filed a report that in her opinion, Robert continued to meet the standards for protective placement, which the guardian recommended, but that Robert requested: (1) "an independent evaluation"; (2) "modification or termination of the protective placement"; (3) that "legal counsel be appointed for" him; and (4) "a full due process hearing." The guardian indicated that Robert would be able to attend the hearing.

¶4 Steven J. Braam, Ph.D, conducted the independent examination of Robert. Dr. Braam, who is a licensed psychologist, concluded that Robert's "Neurocognitive Disorder due to Cerebral Vascular Accident (CVA); Expressive Aphasia; [and] Right-side Hemiparesis" caused him to be incapacitated, and this was "likely to be permanent[.]" Dr. Braam found that Robert's "impaired critical thinking skills" prevent him from making "well-informed decisions about his health care, financial affairs, and his estate." The doctor also indicated that "less restrictive interventions" "would not likely eliminate the need for guardianship and protective placement at this time." Further, Dr. Braam noted that Robert does not have the "evaluative capacity" to give consent for medical treatment, medication, or choose medical providers.

¶5 The report also checked "yes" to the following questions: (1) "[D]oes [Robert] require placement in a licensed, certified or registered setting?"; (2) "[D]oes [Robert] have a primary need for residential care and custody?"; (3) "[D]oes [Robert's] incapacity render [Robert] so incapable of providing for his … own care or custody as to create a substantial risk of serious harm to himself … or others?"; and (4) "[I]s [Robert's] incapacity permanent or likely to be permanent?"

3

¶6      The circuit court held a due process hearing on August 9, 2024, at which only Dr. Braam testified.   In addition to his testimony, Dr. Braam's independent examination report was also admitted into evidence.   Following the hearing, the court found Robert continued to meet the standards for protective placement and entered orders continuing the guardianship and protective placement.   Robert appeals the order continuing his protective placement.[4]

## II.  DISCUSSION

¶7      This court reviews the circuit court's decision on a protective placement under a mixed standard of review.   Factual findings will not be set aside unless they are clearly erroneous.   WIS. STAT. § 805.17(2).   "A finding of fact is clearly erroneous if it is against the great weight and clear preponderance of the evidence."   *Metropolitan Assocs. v. City of Milwaukee*, 2018 WI 4, ¶62, 379 Wis. 2d 141, 905 N.W.2d 784.   Whether the evidence meets the requirements for continued protective placement is a legal question this court reviews de novo.   *Coston v. Joseph P.*, 222 Wis. 2d 1, 23, 586 N.W.2d 52 (Ct. App. 1998).

¶8      A protective placement order requires the County to prove by clear and convincing evidence that Robert satisfies four criteria: (1) he "has a primary need for residential care and custody"; (2) he "has been determined to be incompetent by a circuit court"; (3) he "is so totally incapable of providing for his or her own care or custody as to create a substantial risk of serious harm to himself or herself or others" due to "developmental disability, degenerative brain disorder,

---

[4] Robert's Notice of Intent to pursue postdisposition relief indicated he planned to appeal from both the guardianship and protective placement orders.  However, his Notice of Appeal and appellate briefs only challenge the protective placement order.

serious and persistent mental illness, or other like incapacities"; and (4) he "has a disability that is permanent or likely to be permanent."   WIS. STAT. § 55.08(1)(a)-(d); *see also* **Fond du Lac County v. Helen E.F.**, 2012 WI 50, ¶¶14, 25, 340 Wis. 2d 500, 814 N.W.2d 179.

¶9      Robert challenges only the third and fourth criteria—that the County failed to prove by clear and convincing evidence that he is dangerous and that his impairment is permanent.

¶10     The only evidence in the Record as to the two criteria Robert challenges is Dr. Braam's testimony and Dr. Braam's report.  Dr. Braam's report opines that both criteria are satisfied, and his testimony as to the dangerousness factor is consistent with his report insomuch as he confirmed that Robert's "incapacity render[ed] him so incapable of providing for his own care or custody as to create a substantial risk of serious harm to himself or others right now[.]"  He explained that Robert is "paralyzed on the right side" of his body, has difficulty with decision making and communication, and the impairment of critical thinking skills would adversely affect Robert remembering to take his medications. Dr. Braam also testified that Robert needs 24-hour supervision in a secure facility and opined that this type of placement was necessary due to Robert's need for "assistance with activities of daily living, food preparation, transportation and organization of the transportation to medical appointments."

¶11     The circuit court found that the County proved the dangerousness criterion, explaining that:

> [Robert's] critical thinking skills have been impaired to the
> point where he would not effectively be able to make the
> necessary decisions that would assist him in functioning
> competently and providing the necessary care and custody
> for himself.   As such, the Court is also to make a

determination whether or not his residential care and custody would be appropriate based upon those findings of the doctor and I would agree in that his ability based upon the findings that I've just stated and his present condition does render him incapable of providing for his own care and custody and would create a substantial risk of serious harm to himself and others.

In that same vein, the difficulty here is that [Robert] obviously can communicate to some extent. He can also effectively understand various topics. The issue is whether or not he would be able to exercise the necessary critical thinking which would have him be able to assess appropriately complex situations relative to his care and custody of which in the doctor's opinion under the circumstances, he does not believe he can.

In that same vein, aside from any cognitive deficiencies, the larger issue I believe is the physical impairments of [Robert] and his ability to provide the necessary care and be able to live independently on his own and provide the self-care associated with that, which specifically would include taking the multiple medications he would be required to take and take those as prescribed. Additionally, to provide for his own self-care and bathing, providing and obtaining proper food and taking the same accordingly, appropriately planning for any necessary treatment and coordinating his ability to get to and from that treatment. Essentially overall his inability to properly plan and initiate those needs that would be required of him, aside from the cognitive issues I described earlier but more importantly his physical ailments.

¶12 This court concludes that the Record supports the circuit court's findings and that those findings are not clearly erroneous. Robert's impairments, both physically and cognitively, demonstrated that—at least at the time the circuit court issued its orders—he needed the protective placement so that he was not a danger to himself.

¶13 As for the permanency criteria, the statute requires the County to prove that the impairments are either permanent or likely to be permanent. On this factor, Dr. Braam's report contradicted his testimony. Specifically, although

Dr. Braam marked the box in the report indicating that Robert's impairments are likely to be permanent, his testimony on that issue was not as certain. When asked if Robert's impairment is likely to be permanent, the doctor answered:

> Well, that's the difficult question because even though his impairment might be significant right now, there is a possibility that he has the ability to regain some of his cognitive abilities. We don't know that for sure. He has never to the best of my knowledge had a neuropsychological evaluation to completely map out what his cognitive deficits are and the possibility that they might improve.
>
> It also -- there also appears to be some time after his first medical event that he was able to function on his own. That would speak to his ability to regain some competency at this point in time, but there's just fairly large gaps in information that we don't know. I don't know that I can make any prediction about that.

When Dr. Braam was asked the follow-up question about Robert "right now," his answer indicated that the protective placement was appropriate at that time.

¶14 The circuit court, in addressing the permanency criterion, found:

> The other issue the Court is to determine whether or not these impairments would essentially be permanent, and at this point that is a decision that is hard for the Court to make, particularly given that there's been testimony by the doctor that based upon certain training and various techniques and, again, the testimony was primarily due to his ability to address the cognitive portion as to his competency; however, there was never any follow-up as to his physical impairments which appear, at least in the Court's opinion, in the totality of the reports that I've seen would be permanent.

While this is a closer question given the inconsistency between the doctor's report and his testimony, the court found that even if some of the *cognitive* impairments may improve, the *physical* impairments, which the court specifically noted impacted Robert's ability to care for himself and live independently, are likely

permanent. Evidence in the Record—namely, Dr. Braam's report and the fact that Robert's impairments have continuously required protective placement since August 2023—therefore supports the court's finding. In addition, both Dr. Braam and Robert's guardian believed that at least as of August 2024, Robert needed the protective placement. Accordingly, this court concludes that the Record supports the circuit court's decision to continue the protective placement order.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.